**People of the State of Illinois, Plaintiff-Appellee, v. Michael Machroli, Defendant-Appellant.**

**Gen. No. 51,338.**

First District, First Division.

October 14, 1968.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Constantine P. Xinos and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Richard A. Rinella, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE BURMAN delivered the opinion of the court.

The defendant, Michael Machroli, was indicted for aggravated battery (Ill Rev Stats 1967, c 38, § 12–4) and unlawful possession of narcotics (Ill Rev Stats 1967, c 38, § 22–3). The two indictments were consolidated and tried together without a jury. The court found the defendant guilty and sentenced him to the penitentiary for one to five years on each of the two counts of aggravated battery and five to seven years for unlawful possession of narcotics. All sentences were to run concurrently.

On appeal, the defendant contends (1) that the State failed to prove him guilty of aggravated battery against the person of Sharie Bianca beyond all reasonable doubt; (2) that his motion to suppress a white box and three tablets should have been sustained; and (3) that he was not proven guilty of possession of narcotics beyond all reasonable doubt.

We summarize the evidence. Mrs. Sharon Bianca, a widow, testified that she, her two daughters, Sharie, age two, and Rosemarie, age five, and the defendant lived in a basement apartment at 3418 LeMoyne in Chicago. She stated that on the morning of January 7, 1966, shortly after the defendant had awakened, he became extremely upset about the fact that most of the pudding he had made the night before had been eaten. Although she told the defendant she had eaten the pudding, he blamed the children. The defendant then grabbed one of the children, Sharie, and began slapping her with his open hand. Mrs. Bianca was unable to remember where defendant slapped Sharie, but said that it was with sufficient force to knock the child down and make her cry. Mrs. Bianca further testified that the defendant complained that one of the children had been playing with his cigarette lighter. He accused Rosemarie and when the child denied the accusation he said she was lying. At that point, Mrs. Bianca said she heard her daughter, Rosemarie screaming. When Mrs. Bianca entered the bedroom she saw Rosemarie lying on the bed, a doll in defendant's hand, and a red mark on

230

Rosemarie's leg. Mrs. Bianca then stated that for a while calm returned to the apartment, but suddenly the defendant started jabbing Sharie in the ribs with the end of a spoon. When she tried to intercede on behalf of her daughter, the defendant attacked her with a stool and as a result of the beating Mrs. Bianca sustained four fractured ribs. Mrs. Bianca became afraid that the defendant would cause Sharie permanent harm and ran to her mother's apartment to tell her mother to call the police. Mrs. Bianca stated that Rosemarie had a bruise on her thigh and Sharie had bruises on her face, her forehead, on her back, and on her side by her ribs. She identified several photographs taken of her and Sharie at the police station, which she said accurately showed the extent of their injuries. On cross-examination, Mrs. Bianca testified that Sharie usually falls and bumps into things and that the bruise on Sharie's forehead was caused the day before the incident with the defendant. She also stated, when cross-examined, that she did not want to prosecute the defendant.

Police Officer, Roy Handler, testified that he answered a police call at 3418 West LeMoyne in Chicago on the day in question. When he arrived he found the defendant cornered by Mrs. Bianca, her mother and her grandmother. He stated that he observed multiple bruises on Sharie's back and on the side of her head. The officer also noticed that Rosemarie had a bruise on her thigh. He then arrested the defendant.

Michael Machroli, the defendant, testified that on the morning in question he had tried to wake Mrs. Bianca in order that she could take her daughter, Sharie, to the doctor to get the child's eyeglasses. After giving up the attempt to rouse Mrs. Bianca, the defendant went into the kitchen and found the two girls playing with matches and his lighter. The defendant said he scolded the girls for playing with fire and spanked them. He admitted slapping Sharie about three times, but he did not recall

how hard. When Mrs. Bianca got up she was very irritated about his spanking the children, he said, and she started yelling and screaming. He denied that he ever jabbed Sharie with a spoon or that he struck Mrs. Bianca with a stool.

The defendant argues that his status in Mrs. Bianca's household cast him in the role of loco parentis, and within that capacity, he had the right and duty to discipline Sharie. Secondly, he argues that even if his conduct was outside the protection of loco parentis status, the evidence presented by the State was insufficient to convict him of aggravated battery.

Even if the defendant stood in loco parentis to Sharie Bianca the force he used in reprimanding the child was far beyond the acceptable standards of parental conduct. The beating applied to Sharie went far beyond reasonable force allowed under Illinois law. The defendant claims that the injuries inflicted on Sharie did not constitute aggravated battery since there was no breaking of Sharie's skin, no injury to her bones, and no disfigurement or permanent injury of any kind. However, section 12–4 of the Criminal Code (Ill Rev Stats 1967, c 38, § 12–4) provides that "[a] person, who, in committing a battery, intentionally or knowingly causes great bodily harm . . . commits aggravated battery." What constitutes "great bodily harm" is a question of fact to be determined by the judge or jury. People v. Cavanaugh, 18 Ill App2d 279, 289, 152 NE2d 266.

In the case at bar, the trial judge not only heard the testimony of the complaining witness as to the charge of aggravated battery, but also observed the condition of the child in the pictures taken at the police station on the same day. It is well settled in Illinois that because a trial court as the trier of the facts is peculiarly suited to determine questions of truthfulness, a reviewing court will not readily substitute its own conclusions unless the proof is so unsatisfactory as to justify a reason-

able doubt of guilt. People v. Boney, 28 Ill2d 505, 192 NE2d 920; People v. Woods, 26 Ill2d 582, 187 NE2d 692. Thus, we cannot say as we must to reverse that the proof was so unsatisfactory as to justify a reasonable doubt of guilt.

The second of the defendant's three contentions concerns the motion to suppress a white box and three tablets offered in evidence by the State. The defendant does not dispute that he was lawfully arrested on charges of aggravated battery, but argues that the warrantless search that turned up the narcotics was illegal in that it was not conducted contemporaneously with and incidental to the arrest.

At the pretrial hearing on the motion to suppress, the defendant testified that when he was arrested in Mrs. Bianca's apartment, a police officer handed him his clothes and that after he had put them on he was taken to the police station. The defendant said he did not know that he was charged with illegal possession of narcotics until four days after his arrest on the battery charge. He also stated he did not remove anything from his pants after they were handed to him by the arresting police officer.

Officer Roy Handler testified that when he arrived in the apartment the defendant was sitting in his underwear in the bedroom. After placing the defendant under arrest he handed the defendant his trousers. Before the defendant came out of the bedroom the officer stated that he observed the defendant remove a box from his pants pocket and saw him place it on a dresser in that room. Officer Handler said he picked up the box and found three small tablets inside. When the officer asked the defendant what he did with the pills, the defendant replied that "he takes them." On cross-examination the officer said he had not searched the trousers before giving them to the defendant and he did not know what was in the box at the time of the arrest. Officer Handler

233

further testified that the defendant admitted the pills were his while in the police car. At the conclusion of this testimony the Court denied the motion to suppress.

██ ██ It is well-settled law that observation of that which is open to view does not constitute a search, so that seizure of articles in plain view cannot be considered unreasonable. People v. Tate, 38 Ill2d 184, 230 NE2d 697; People v. Davis, 33 Ill2d 134, 210 NE2d 530; People v. McCracken, 30 Ill2d 425, 197 NE2d 35. A search implies a prying into hidden places for that which is concealed. People v. Woods, 26 Ill2d 557, 188 NE2d 1. In People v. Davis, the defendant was arrested for two traffic violations. As the defendant got out of his car to produce his driver's license, the arresting police officer noticed a tinfoil packet in plain sight on the floor of the car. The officer reached into the car, picked up the packet, cracked it open, and found that it contained white powder which was later identified as a narcotic drug. The court held that "[a]s to the first tinfoil package seized by the police officer, there was obviously no search." People v. Davis, 33 Ill2d 134, 138, 210 NE2d 530. Officer Handler in the case at bar did no more than was done in the Davis case. He saw the defendant place a small white box on a dresser, he then picked up the box, opened it, and found three tablets which were later identified as narcotic. We cannot say that the seizure of the white box and tablets in the instant case was any more unreasonable than the seizure of the tinfoil packet in Davis and thus hold that the defendant's contention is without merit.

The defendant's third and last contention involves whether he was proven guilty of possession of narcotics beyond all reasonable doubt. In support of this contention the defendant maintains that Officer Handler's testimony that he did not search the defendant's trousers, that he saw the defendant take a box out of his trousers and place it on the dresser, and that he pocketed the box

and took it with him to the police station, is incredible and unbelievable. It is defendant's argument that Officer Handler did search the trousers, did not find anything resembling narcotics, and that the box and pills introduced into evidence as narcotics were taken when two other officers returned to the apartment after the defendant had been charged with aggravated battery and jailed.

The record shows that Officer Handler testified that he observed the defendant take a white box out of his trouser pocket and place it on the dresser. Officer Handler also testified that he looked in the box and found three pills inside and that when he asked the defendant if they were his the defendant replied they were. Officer Handler further testified that the box containing the pills was inventoried and that he and another officer took the box and pills in a sealed package to the crime laboratory for analysis. The box and three pills were offered and received in evidence and were the only narcotics offered by the State.

Mrs. Bianca was recalled as a defense witness and testified that two policemen came to her apartment after the defendant had been taken to the police station. She said she gave the officers some drugs that were hidden under a chess board. It is this testimony that gives rise to the defendant's contention that Officer Handler searched the defendant's trousers, found nothing and that the narcotics offered and received in evidence were taken from the apartment after the police had arrested and removed the defendant. However, Mrs. Bianca also testified while a defense witness that the box she gave the police when they returned to her apartment was not the same one in evidence.

 The record clearly discloses that the only narcotic exhibit offered by the State was the box and its contents taken from the dresser after the defendant had removed them from his trouser pocket. Apparently, the

other box testified to by Mrs. Bianca to have been taken from the apartment by the police officers, after the defendant's removal to the police station, was not offered as an exhibit against the defendant and was not considered by the trial court. Whether Officer Handler was to be believed or whether his testimony should be characterized as unreasonable and contrary to human conduct, as urged by the defendant, was a matter for the trial judge to determine. Where a cause is tried by the court without a jury, the determination of the credibility of the witnesses and the weight to be accorded their testimony is committed to the trial judge. We will not substitute our judgment for that of the trial judge even though evidence regarding a material fact is conflicting and is irreconcilable. People v. West, 15 Ill2d 171, 154 NE2d 286. Where there is sufficient evidence to support the decision of the trial judge, as is the situation here, a reviewing court will not disturb the conviction.

For the reasons given the judgment of the Criminal Division of the Circuit Court is affirmed.

Judgment affirmed.

ADESKO and MURPHY, JJ., concur.