THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* PHILLIP
MEEKS, Defendant-Appellant.

(No. 55094; )

First District (1st Division)—May 14, 1973.

James J. Doherty, Public Defender, of Chicago, (Bernard L. Schwartz and Ian Levin, Assistant Public Defenders, of counsel,) for appellant.

Bernard Carey, State's Attorney, of Chicago, (Kenneth L. Gillis and Thomas Mauet, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE EGAN delivered the opinion of the court:

The defendant, Phillip Meeks, was found guilty by a jury of the murder of Murray Mitchell and the aggravated battery of Stanley Jackson, Ethel Brooks, and James Johnson; he was sentenced to the penitentiary for terms of 30 to 60 years on the murder, 5 to 10 years on one aggravated battery, and 2 to 5 years on each of the other two; all sentences were to run concurrently. The defendant contends: (1) he was not proved guilty beyond a reasonable doubt of any of the charges; (2) his cross-examination of a police officer was improperly restricted; (3) his own direct examination was improperly restricted; (4) his cross-examination by the Assistant State's Attorney was prejudicially improper; (5) the jury was improperly instructed; (6) the sentence was excessive.

On the evening of October 25, 1968, the defendant and several others were shooting dice at Cary Robinson's home at 46th Place in Chicago. An argument ensued between the defendant and Percy Gordon. Whether any blows were struck is in dispute. James Johnson interceded and later knocked the defendant down. No words were exchanged after that, and everyone left. Johnson went to Brady's Lounge at 47th and Forrestville. Less than an hour later the defendant came in and fired shots under circumstances which were the subject of conflicting testimony; but the shooting resulted in the death of Murray Mitchell from a gunshot wound of the chest, the wounding of Johnson in the arm and jaw, of Stanley Jackson in the leg, and Ethel Brooks in the foot.

When the police arrived, they were given two pistols by Brady Harden, the owner of the tavern. One, a five-shot, .38 caliber revolver had four expended cartridges and one live round in the cylinder; the other, a six-shot, .32 caliber revolver had two live rounds and no expended cartridges in the cylinder. The .38 caliber revolver had been fired by the defendant, and a bullet from that gun killed Murray Mitchell.

James Johnson testified for the State that he was seated at the bar when the defendant entered, pulled a gun from his belt, and fired four or five shots at him. He was ducking and dodging and struggled with the defendant. The bartender wrested the gun from the defendant's hand. Brady Harden picked up another pistol from the floor and later gave it to the police. Johnson also testified that he did not own a gun and did not have one with him that night.

O'Neil Fleming testified for the State that he was present when the defendant was struck by Johnson after the argument at the dice game. Later he went to Bobby's Lounge. The defendant came in, looked at the bar, looked down the stairway that leads to the washroom, and then left. There was only one other man present when the defendant came in. Fleming spoke to the defendant, who did not answer. Fleming left and went to Brady's Lounge where he saw the defendant standing across the street. Shortly thereafter he saw the defendant walk in with his hands in his pocket, pull out a revolver and fire. He saw Johnson struggling with the defendant, who had a revolver in his hand, but he never saw Johnson with any weapon.

Brady Harden testified he was standing outside his tavern when the shots were fired. After he entered, he saw the defendant being held by the bartender, who told him that there was another gun on the floor. When he went to pick it up, the defendant, who had his foot on the gun, told him: "Don't bother or I'll blow your brains out." He picked up the gun which was the .32 caliber revolver and later gave both guns to the police.

Although several other witnesses who were present testified for the State, only Fleming and Johnson testified that they saw the actual shooting. None of the witnesses saw a gun in Johnson's hand. Johnson and the defendant had been drinking.

The defendant testified that he had the .38 caliber revolver with him when he was gambling and when he was struck by Johnson. When he went into Brady's Lounge, he was looking for Cary Robinson because he had left his coat and keys in Robinson's house. He was not looking for Johnson, whom he had known about a year and with whom he had drunk and gambled. When Johnson saw him, he pulled out a gun and pointed it at the defendant, who jumped aside, pulled out his gun from his rear pocket and fired. He further testified that he fired his gun because

Johnson had fired his. He denied that he told Brady Harden not to "move [the] gun or [he would] blow his brains out." He also denied that the gun on the floor was his or that he was being restrained by the bartender when the police arrived.

Stanley Jackson, who was one of the complainants in the aggravated battery indictments, testified for the defense that he had seen a gun like the .32 caliber revolver in Johnson's house.

Cary Robinson testified that the defendant had left his coat at Robinson's home the day of the shooting, and it had remained there for over a year until a few days before trial.

■■ The defendant first contends that his evidence as to self-defense leaves a reasonable doubt as to his guilt. Although the evidence does leave unanswered the question of possession of the second gun, that answer is not necessarily dispositive of the case. While we believe the jury was justified in believing the State's witnesses, including Johnson, that he had no gun at the time, the only determinative question is whether or not the defendant was under a reasonable apprehension of losing his life or suffering great bodily harm. (*People v. Johnson*, 2 Ill.2d 165, 117 N.E.2d 91.) The defendant places particular emphasis on the possibility that the second gun, with its obviously significant unexpended shells, did not fire although the trigger was pulled several times. This thesis, of course, ignores the testimony of the defendant that Johnson fired the gun. Moreover, the defendant concedes this fact when he argues that the other people injured could have been struck from bullets from the second gun and not the defendant's. Whether a killing is justified under the law of self-defense is always a question of fact. (*People v. McClain*, 410 Ill. 280, 102 N.E.2d 134.) The jury obviously believed the State's version of the shooting, and we cannot say that that version is so unreasonable, improbable or unsatisfactory as to require entertaining a reasonable doubt of the defendant's guilt. See *People v. Kendricks*, 4 Ill.App.3d 1029, 1032, 283 N.E.2d 273.

■■ The defendant next contends that the State failed to establish guilt of aggravated battery for two reasons: (1.) the complainants did not suffer great bodily harm; (2.) there is no proof that the bullets which struck the witnesses came from the defendant's gun. Neither of the reasons offered is acceptable. Johnson was shot twice, in the arm and chin, and was hospitalized for three days; Jackson was shot in the leg and hospitalized for a week; Ethel Brooks was shot in the foot, which was sewn and bandaged. Subsequently, she could walk only with assistance, and the injury required two further treatments at the hospital. In the case of *People v. Machroli*, 100 Ill.App.2d 227, 241 N.E.2d 609, the court upheld a conviction of aggravated battery where the evidence showed that the defendant slapped a two-year-old girl with his open

hand with sufficient force to knock her down and jabbed her in the ribs with the end of a spoon. She had bruises on her face, her forehead, her back, and on her side near her ribs. The court held that what constitutes "great bodily harm" is a question of fact to be determined by the jury. (See also *People v. Cavanaugh*, 18 Ill.App.2d 279, 152 N.E.2d 266.) We cannot say that the gunshot wounds suffered by these witnesses, as a matter of law, did not constitute "great bodily harm," if, indeed, we could say it of any gunshot wound.

■■ If the jury believed that the second gun was never fired, the conclusion is inescapable that the defendant fired the shots that struck the witnesses.

■■ Keith Grabowski was the police officer to whom Brady Harden gave both revolvers. He testified on direct examination that the second gun had two live rounds and no expended cartridges in the six chambers. On cross-examination he was asked if he had noted where the bullets were in the chamber and if he knew whether the gun could have been fired or not. Objections to both questions were sustained, apparently on the ground that the questions had been asked and answered. Contrary to the defendant's contention here, this ruling was correct. The officer testified in response to previous questions on cross-examination that the unspent bullets could have been in position to be fired, but he did not know whether, if he pulled the trigger, a bullet would have come out.

■■ On direct examination the defendant was asked if he intentionally and deliberately shot Ethel Brooks and the deceased Murray Mitchell. Objections to the questions were sustained on the ground assigned by the court that the defendant was "invading the province of the jury by [the] questions." The defendant should have been permitted to answer the questions. However, the error was harmless since, under both the State's evidence as well as the defendant's, it is apparent that the defendant intended to shoot only Johnson. See *People v. Cohen*, 305 Ill. 506, 511-512, 137 N.E. 511.

■■ On cross-examination of the defendant the following occurred:

"Q. Did you observe Mr. Harden in a motion go down towards that gun? Did you see him do that?

A. Yes.

Q. Did you state to him at that time, 'Don't move that gun, or I will blow your brains out'?

A. Nothing to that effect. I did ask him not to touch the weapon.

Q. But you never used that manner of speaking to him?

A. To no one else. I never have stated nothing to that effect to no one else.

Q. So Mr. Brady Harden lied when he said that?

A. Yes, sir, he did.

Q. And when Mr. Harry Love testified that he was holding you at the time the police arrived, he lied, too?

A. He didn't have his hands on me, no, sir.

Q. Then he lied, that he stated that he was restraining you when the police arrived?

Defense Attorney: Objection.

The Court: He may answer.

The Witness: There was no physical contact between Mr. Love and I at the time the police arrived, no, sir.

State's Attorney: Q. Do you recall the testimony of Officer Grabowski who testified in this case?

A. Yes, sir.

Q. Do you recall his testimony that when he entered the tavern there was somebody restraining you? Do you recall him testifying that?

A. I am not sure if he used the word 'restraining.'

Q. Holding you, or something like that?

A. Yes.

Q. That was not true?

A. No one was holding me.

Q. Officer Grabowski also testified when he said someone was restraining you at the time he walked into the tavern?

A. If he said restraining me, yes.

Q. If he used holding you or restraining you in a manner of speaking, that he was holding you, he was lying?

Defense Attorney: Objection.

The Court: He may answer.

The Witness: Mr. Love was standing behind the bar, sir. Perhaps—

The Court: Will the witness just answer the question? Read the question.

The Witness: Yes, sir, he was.

State's Attorney: All right."

The defendant contends that the questions were improper, and we agree. In his closing argument the prosecutor referred to this testimony of the defendant without objection; but we are not persuaded by the State's argument here that, by failing to object to the first question or the argument, the defendant has waived the point. It is understandable that the defense attorney, after having received an adverse ruling on the questions asked, would deem it advisable to refrain from objecting to

the argument. However, we do not consider the error to be of such magnitude that a new trial is required. (See *People v. Izzo*, 14 Ill.2d 403, 151 N.E.2d 329; *People v. Laurry*, 5 Ill.App.3d 713, 283 N.E.2d 895.) As the defense attorney pointed out in his closing argument, whether the defendant made the remark to Harden or whether he was restrained at the time the police arrived was of relatively little importance in the light of all the other evidence. Moreover, other witnesses, including one later called by the defendant, testified that the defendant was restrained by the bartender. The case cited by the defendant, *People v. Hicks*, 133 Ill.App.2d 424, 273 N.E.2d 450, 458, involved cross-examination of a defendant that included attempts to show other offenses and drunkenness. The court said that the prosecutor's questions about all the other witnesses lying, "when considered together with prior cross-examination of defendant, was prejudicial to defendant." We conclude that these questions, standing alone, although improper, were not prejudicial.

■■■ The defendant contends that the jury should have been instructed in conformance with IPI-Criminal No. 25.05, which provides that the State is required to prove that the defendant was not justified in using the force which he did use. The defendant did submit, and the court gave, other pattern instructions, including IPI-Criminal No. 24.06, which is couched in the language of the statute and succinctly states the law of self-defense. Although he did not submit IPI-Criminal No. 25.05, or any similar instruction, the defendant argues that the failure of the State to submit, or the court to give, *sua sponte*, such an instruction constitutes reversible error. We disagree. The general rule provides that "If an accused wishes certain instructions to be given, he should offer them and request the court to give them, since the trial court is under no duty to give instructions on its own motion." (*People v. Lindsay*, 412 Ill. 472, 484, 107 N.E.2d 614; see also *People v. Springs*, 51 Ill.2d 418, 425, 283 N.E.2d 225.) In the case cited by the defendant, *People v. French*, 5 Ill.App.3d 908, 909, 284 N.E.2d 481, the court reversed a conviction of burglary where the defense submitted no instructions, and IPI-Criminal No. 2.03, which explains the presumption of innocence and reasonable doubt, was not given. The court, while noting the general rule, pointed out that the Committee Note to that instruction specifically provided: "This instruction *must* be given in *all* cases." (Emphasis from IPI.) The court further noted that it was not holding that it would be error to fail to give the instruction in all cases, but under the facts of that case, where the presumption of innocence was not mentioned in any instruction or argument to the jury, it was error to fail to give it. In this case the jury was instructed on the law of self-defense, and in his closing argument the defendant's attorney said:

"\* \* \* [A]nd I beg you, when you do demand, demand that the evidence show beyond a reasonable doubt that the man who did this killing intended to inflict bodily harm, that he was not faced with fear of danger to his own safety, danger of bodily harm, that he was not faced with the threat of serious bodily harm to himself."

In similar vein, the defendant contends that the court erred in failing to instruct the jury on manslaughter even though he did not, citing *People v. Joyner,* 50 Ill.2d 302, 278 N.E.2d 756. In that case the Supreme Court held that it was error for the court to fail to instruct the jury on manslaughter where there was evidence to support it, which the State apparently conceded, and, most significantly, the defense did submit a manslaughter instruction which was refused because it was not in conformance with the IPI instruction. Apart from the serious question of whether the facts here could support a manslaughter verdict, we think the State's position is supported by *People v. Taylor,* 36 Ill.2d 483, 491, 224 N.E.2d 266, where the court clearly addressed itself to the issue before us in an exhaustive opinion and concluded that the trial judge was not required to give a manslaughter instruction and, since the defendant did not request one, there was no error of which the defendant could complain.

Finally, the defendant contends that his sentence was excessive and should be reduced. Before a court of review disturbs a sentence set by a trial judge, who is in a better position to make a proper determination as to punishment, the sentence must be "greatly at variance with the purpose and spirit of the law of manifestly in excess of the proscriptions of section 11 of article II of the Illinois constitution which requires that all penalties should be proportioned to the nature of the offense." (*People v. Fox,* 48 Ill.2d 239, 251, 269 N.E.2d 720.) That we might have imposed a lesser sentence is not enough. The defendant was 39 years old, and his only previous criminal record was for a one-year sentence in the County Jail ten years before for contributing to the sexual delinquency of a minor. However, this evidence discloses a deliberate and indiscriminate assault in a crowded tavern wherein an innocent person was slain and at least two others were wounded. Under the circumstances of this case it would be inappropriate for us to substitute our judgment for that of the trial judge. See also *People v. Kendricks,* 4 Ill. App.3d at pages 1033-34.

The judgment of the circuit court is affirmed.

Judgment affirmed.

GOLDBERG and HALLETT, JJ., concur.