THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JAMES CALDWELL, Defendant-Appellant.

Second District (2nd Division)   No. 75-231

Opinion filed June 7, 1976.

Ralph Ruebner, of State Appellate Defender's Office, of Elgin, for appellant.

Jack Hoogasian, State's Attorney, of Waukegan (Edward N. Morris and Christine Drucker, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE DIXON delivered the opinion of the court:

Defendant James Caldwell was indicted by a Lake County grand jury on five counts of murder and one count of voluntary manslaughter in the killing of T. J. Johnson at Ken's Liquors in North Chicago. Prior to trial, the State moved to *nolle prosse* the voluntary manslaughter charge. Following a jury trial, defendant was found guilty of murder and sentenced to 40 to 60 years in the Department of Corrections. On appeal defendant contends he was denied a fair trial by the court's failure to allow the parties to personally question the prospective jurors, by the failure of the State's Attorney to comply with discovery, and by the failure of the court to *sua sponte* give the jury an issues in murder instruction which included the issue of self defense.

At the outset of *voir dire* the court informed the parties that he would conduct the questioning of the veniremen from questions submitted by the parties. Defendant objected to this method. The *voir dire* was commenced November 12, 1974, prior to the 1975 amendment of Supreme Court Rule 234[1], so that Rule 234 as it then existed was as follows:

"The judge shall initiate the *voir dire* examination of jurors by identifying the parties and their respective counsel and briefly

---

[1] The amended Supreme Court Rule 234, effective July 1, 1975, provides for procedures similar to that used by the court in the instant case:

The court shall conduct the *voir dire* examination of prospective jurors by putting to them questions it thinks appropriate touching their qualifications to serve as jurors in the case on trial. The court *may* permit the parties to submit additional questions to it for further inquiry if it thinks they are appropriate, or may permit the parties to supplement the examination by such direct inquiry as the court deems proper. Questions shall not directly or indirectly concern matters of law or instructions. Ill. Rev. Stat. 1975, ch. 110A, par. 234.

outlining the nature of the case. The judge shall then put to the jurors any questions which he thinks necessary, touching their qualifications to serve as jurors in the cause on trial. The parties or their attorneys shall be allowed a reasonable opportunity to supplement such examination, but shall not directly or indirectly examine jurors concerning matters of law or instruction." Ill. Rev. Stat. 1973, ch. 110A, par. 234.

Among the questions asked of the jurors by the court were the following:

1. Do you know of anything in your background that has not yet been inquired about which would prevent you from being a fair, attentive, and impartial juror in this case?

2. Do you know of any reason why you would not wish to be a juror in this trial?

3. Are any of you members of any fraternal organization which excludes blacks from membership or has segregated chapters of blacks?

4. Are any of you members or support any other club, organization or group which excludes blacks or otherwise preaches "white supremacy"?

5. Does the fact that defendant is a black person create any feeling against him on your part?

6. Is there any juror who for any reason feels he might not sit fairly?

7. Would any juror have any personal problem in sitting a full two or three or even four days for this trial?

8. Would any juror prefer to be excused in light of the possibility that this trial may go several days?

As a result of this questioning, the court excused two jurors because of racial prejudice and one juror because of a medical problem which would interfere with his ability to deliberate. The defendant was allowed 20 peremptory challenges and exercised 16 of them.

Defendant contends that he was denied due process of law and his right to a trial by a fair and impartial jury by the court's refusal to either let him question the jury directly or to ask all of the questions submitted by defendant. The questions submitted but not asked were whether the jury felt they would get a fair trial with a jury of all blacks or substantially all blacks; whether any jurors belonged to the Eagles, the Elks, the Moose, or the John Birch Society; or whether any jurors would have personal or medical problems if their deliberation required them to be sequestered for any period of time.

■■ The effect of Rule 234 as it then existed was to place the primary duty of conducting *voir dire* examination upon the trial court, subject to a reasonable opportunity by the parties to supplement such examination.

4

(*People v. Carruthers* (1974), 18 Ill. App. 3d 255, 260.) From the early case of *Donovan v. People* (1891), 139 Ill. 412, up until the time of the 1975 amendment of Rule 234, the defendant had the right to question the veniremen directly. It was pointed out in *People v. Lobb* (1956), 17 Ill. 2d 287, 301, that *Donovan* was based on an earlier Michigan case, and Michigan had since changed to allow the judge, in his discretion, to conduct the entire examination, and that selection of an impartial jury did not require that the parties be permitted to examine; however it has been held that direct questioning by the parties was not to be prohibited entirely. *People v. Carruthers* (1974), 18 Ill. App. 3d 255, 261; *People v. Willis* (1975), 26 Ill. App. 3d 518, 527; *People v. Etten* (1975), 29 Ill. App. 3d 842, 845.

■■■ In the instant case, though, we find no violation of Rule 234 for we feel that the defendant was given a "reasonable opportunity" to supplement the court's examination. The defendant submitted questions to the court on the area of racial prejudice and ability to serve on a jury for a 3- or 4-day trial, and the court covered these areas in somewhat more general terms than the defendant would have liked. Defendant contends that the court's refusal to ask the specific questions interfered with his ability to uncover hidden biases and prejudices in order to exercise his peremptory challenges. In this case, the defendant, victim, and almost all of the witnesses were black, while the prospective jurors were, presumably, primarily white. There is no evidence that the defendant is a special target of racial prejudice, and absent such showing the U.S. Supreme Court recently held in *Ristaino v. Ross* (1976), ___ U.S. ___, 47 L. Ed. 2d 258, 263, 96 S. Ct. 1017, that "the State's obligation to the defendant to impanel an impartial jury generally can be satisfied by less than an inquiry into a specific prejudice feared by the defendant." We feel the court adequately explored the areas suggested by the defendant; the procedure used created a reasonably assurance that prejudice would be discovered if present, (*United States v. Dellinger* (7th Cir. 1972), 472 F.2d 340, 367), and defendant has not shown us that the jury was not impartial. Where a *voir dire* examination—whether conducted by the court or by counsel—results in a qualified and impartial jury, no prejudicial error occurs in its selection. (*Justice v. Justice* (1969), 114 Ill. App. 2d 254; *People v. Carruthers* (1974), 18 Ill. App. 3d 255, 261.) We therefore find no reversible error in the trial court's manner of examination of the potential jurors.

Defendant's second contention is that the State's failure to comply with the continuing discovery order denied him a fair trial. The order provided for disclosure by the State to defendant and to the court of, in part, "* * * memoranda containing substantially verbatim reports of their [persons whom the State intends to call as witnesses] oral statements, and

a list of memoranda reporting or summarizing their oral statements which the State does not consider substantially verbatim."

The alleged error concerns a conversation between the Assistant State's Attorney and Ann Easley, a State's witness, on November 13, 1974, the second day of *voir dire*. Ms. Easley then told the Assistant State's Attorney that she felt a gun in the pocket of one Henry Simpson while she was talking to him at Ken's Liquors prior to the time of the shooting of T. J. Johnson, but that because of her fear of the defendant and his cousin Simpson she would not testify to that fact, and if she were compelled to testify to the substance of that statement she would refuse to testify altogether. Accordingly, when Ms. Easley took the stand during the State's case in chief, no evidence concerning this gun was elicited. However, Ms. Easley was subsequently called as a rebuttal witness and testified to the above fact after defendant had taken the stand and testified that he shot in self-defense; that after the shooting he'd bent down by the body, picked up Johnson's gun, and handed it to Simpson.

In the affidavit filed by the Assistant State's Attorney at the hearing on the post-trial motion concerning failure to disclose this conversation to the defense, and to which the Assistant State's Attorney attached copies of his notes, he stated that Ms. Easley's statement had not been reduced to writing; that nowhere in the notes of that conversation with Ms. Easley is there any mention of Simpson having a gun. The defendant cites us to *People v. Sumner* (1969), 43 Ill. 2d 228, 235, that where relevancy and competence of a statement or report has been established, and no privilege exists, upon appropriate demand the report shall be delivered to defendant. Had there been any memorandum of Ms. Easley's statement, the order entered under Supreme Court Rule 412 (Ill. Rev. Stat. 1973, ch. 110A, par. 412) would have required disclosure of at least a summary of this statement to defendant. However, the order does not operate when no written memorandum of the statement in question is made, and there is no requirement that all oral statements in the possession or control of the State be reduced to writing absent bad faith. *People v. Manley* (2d Dist. 1974), 19 Ill. App. 3d 365, 369; *People v. Wilson* (2d Dist. 1975), 32 Ill. App. 3d 842, 845.

■■ Viewing the circumstances of the conversation eliciting the information later used in rebuttal in this case, we find no bad faith in the prosecutor's failure to reduce the statement to written form. The conversation did not take place until *voir dire* was in its second day. Ms. Easley was quite reluctant to give the information and stated she would refuse to testify at all if she were compelled to give this evidence. The prosecutor agreed not to question her regarding it during direct examination, and only called her to testify to it after defendant presented his defense. The defendant was in possession of the witness' earlier

statement, which he used on cross-examination, and the notes which were taken by the prosecutor of the conversation with Ms. Easley during the *voir dire* were consistent with her testimony during the State's case in chief. Accordingly we find no bad faith in the Assistant State's Attorney's failure to make a written memorandum of the statement concerning the gun, and therefore no prejudicial error in the State's failure to disclose this information to defendant.

Defendant's final allegation of error concerns the instructions given the jury. The State tendered IPI Criminal No. 7.02, issues in murder, which makes no mention of justifiable use of force. There was no objection by defendant, and this instruction was read to the jury. The jury was also read IPI Criminal No. 24.06, the definitional instruction on justifiable use of force, consistent with defendant's defense of self-defense. Defendant now contends it was error not to include the element of self defense in the issues in murder instruction, and that this court should recognize this error under Supreme Court Rule 451(c) (Ill. Rev. Stat. 1973, ch. 110A, par. 451(c)) which provides that substantial defects in instructions are not waived by failure to make timely objections.

Defendant relies solely on *People v. Wright* (3d Dist. 1974), 24 Ill. App. 3d 536, for his contention of error, however there is an important distinction between *Wright* and the instant case. In *Wright*, the jury was read IPI Criminal No. 25.05 in addition to IPI Criminal No. 7.02 and IPI Criminal No. 24.06. IPI Criminal No. 25.05 combines the elements of issues of the crime and issues in defense of justifiable use of force into a single instruction. In that case there was found to have been reversible error because of the conflict in the instructions; the jury was told that the State had to prove beyond a reasonable doubt that defendant was not justified in the force he used (IPI Criminal No. 25.05) and also that they could find defendant guilty of murder without having to find he wasn't justified in using the force he used. It was the contradiction in instructions which undermined the fundamental fairness of the trial and led to the holding that it was error to give the jury IPI Criminal No. 7.02 in that situation even though defendant did not object to the giving of that instruction.

■■ The situation in the instant case, where IPI Criminal Nos. 7.02 and 24.06 were given and IPI Criminal No. 25.05 was neither tendered nor given, has arisen before and has, we think correctly, been treated in a manner different from *Wright*. Directly on point is *People v. Allen* (5th Dist. 1976), 35 Ill. App. 3d 342, 347, 341 N.E.2d 431, 435:

> "If an accused wishes certain instructions to be given, he should offer them and request the court to give them, since the trial court is under no duty to give instructions on its own motion. (*People v. Meeks*, 11 Ill. App. 3d 973.) It has long been held that the jury is

properly instructed if the series of instructions, construed as a whole, fully and properly informs the jury of the law applicable to the case. (*People v. Turner,* 82 Ill. App. 2d 10.) In the instant set of instructions, the jury was given IPI 7.02 (burden of proof of murder, without mention of self-defense), 24.06 (justifiable use of force); and IPI 2.03 (presumption of innocence, including the State's burden of proving the defendant guilty beyond a reasonable doubt and the defendant not being required to prove his innocence). This series construed together sufficiently informed the jury of the law applicable to the defendant's theory of defense, self-defense, and of the State's burden of proof. Had the defendant tendered IPI 25.05 the court would have been under a duty to give the instruction. In the absence of such a request, however, the instruction which the court did give provided an adequate guide for the jury."

The same holding was recently reached by this court in *People v. Bedford* (2d Dist. 1976), 38 Ill. App. 3d 1072. We agree with defendant that it would have perhaps been better practice if the jury had been given IPI Criminal No. 25.05 in place of IPI Criminal 7.02, but we find there was no prejudicial error in the jury instructions as given when there was no objection from defendant and there was no omission of substance in the given instructions. *People v. Jones* (1975), 60 Ill. 2d 300, 309; *People v. Viser* (1975), 62 Ill. 2d 568, 343 N.E.2d 903, 911.

For the foregoing reasons, the judgment of the Circuit Court of Lake County is affirmed.

Judgment affirmed.

T. J. MORAN, P. J., and RECHENMACHER, J., concur.