UNITED STATES of America ex rel. James CALDWELL, Petitioner,

v.

STATE OF ILLINOIS, Respondent.

No. 76 C 4287.

United States District Court, N. D. Illinois, E. D.

Jan. 28, 1977.

James Caldwell, pro se.

William J. Scott, Atty. Gen., Chicago, Ill., for respondent.

## MEMORANDUM OPINION

FLAUM, District Judge.

■ Before the court is respondent's motion to dismiss, or for summary judgment on James Caldwell's petition for a writ of habeas corpus. Petitioner collaterally attacks[1] his murder conviction on three

---

1. Although in its motion respondent suggests that petitioner has failed to exhaust his state court remedies and therefore this petition is untimely, since petitioner has appealed his conviction thus effectively precluding him from seeking state court collateral relief, the burden

grounds, but this court finds each to be without merit, and therefore respondent's motion for summary judgment is granted there being no genuine issue of material fact. Fed.R.Civ.P. 56(b).

## I

■ Petitioner's first ground is that he was denied a fair trial and due process by the state trial court's refusal to: (1) allow the parties to personally conduct the voir dire examination; and (2) propound to the venire certain questions tendered by the defense. While in his state appeal petitioner contended that the failure of the trial court to allow petitioner to conduct the voir dire violated Illinois law, *People v. Caldwell*, 39 Ill.App.3d 1, 349 N.E.2d 462 (1976), it can not be seriously contended that a criminal defendant *must* be allowed, pursuant to the fourteenth amendment, to conduct the voir dire in order to insure the impaneling of a fair and impartial jury. *Cf. Ristaino v. Ross*, 424 U.S. 589, 96 S.Ct. 1017, 1020, 47 L.Ed.2d 258 (1976); *United States v. Esquer*, 459 F.2d 431, 434 (7th Cir. 1972), *cert. denied*, 414 U.S. 1006, 94 S.Ct. 366, 38 L.Ed.2d 243 (1973). As the Supreme Court stated in *Ristaino*, "*Voir dire* 'is conducted under the supervision of the court, and a great deal must, of necessity, be left to its sound discretion.'" 424 U.S. at 594, 96 S.Ct. at 1020, quoting *Connors v. United States*, 158 U.S. 408, 413, 15 S.Ct. 951, 39 L.Ed. 1033 (1895). Therefore, this court need only consider whether the trial court's refusal to ask certain questions suggested by the defense denied petitioner his right to a fair trial.

■ During the voir dire, the trial court asked most of the questions presented by the defense but refused to propound three questions: (1) whether the jury felt they would get a fair trial with a jury of all blacks or substantially all blacks; (2) whether any jurors belonged to the Eagles, the Elks, the Moose, or the John Birch Society; or (3) whether any jurors would have personal or medical problems if their deliberation required them to be sequestered for any period of time. As stated in *United States v. Dellinger*, 472 F.2d 340 (7th Cir. 1972), *cert. denied*, 410 U.S. 970, 93 S.Ct. 1443, 35 L.Ed.2d 706 (1973), the test for the validity of a voir dire is "whether the procedure used for testing impartiality created a reasonable assurance that prejudice would be discovered if present." *Id.* at 367. In the case at bar, the trial court's failure to ask the aforementioned questions did not invalidate what was an adequate and proper voir dire under the *Dellinger* standard. As to questions (1) and (2), they were addressed to the possible racial prejudice of the prospective jurors, and they were more specific than the questions actually asked by the trial court.[2] However, in *Ristaino v. Ross*, 424 U.S. 589, 96 S.Ct. 1017, 47 L.Ed.2d 258 (1976), the Court declared that unless there were special circumstances indicating a "need" for a specific inquiry into an area to discover prejudice, as was present in *Ham v. South Carolina*, 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973), a trial court need only ask generalized questions designed to discover racial or other types of prejudice in the venire. Since the

is on respondent to show direct authority for the proposition that petitioner has a state remedy available at this time. *Brown v. Warden*, 417 F.Supp. 970, 971–72 n.1 (N.D.Ill.1976); *Bonner v. Warden*, 422 F.Supp. 11, 13–14 (N.D. Ill.1976).

2. The questions concerning the possible racial prejudice of the jurors which were asked by the trial court were:

1. Do you know of anything in your background that has not yet been inquired about which would prevent you from being a fair, attentive, and impartial juror in this case?

\*     \*     \*     \*     \*     \*

3. Are any of you members of any fraternal organization which excludes blacks from membership or has segregated chapters of blacks?
4. Are any of you members or support any other club, organization or group which excludes blacks or otherwise preaches "white supremacy"?
5. Does the fact that defendant is a black person create any feeling against him on your part?
6. Is there any juror who for any reason feels he might not sit fairly?

*People v. Caldwell*, 39 Ill.App.3d 1, 3, 349 N.E.2d 462, 464 (1976).

present case presents no such special need for specific inquiry,[3] the trial court's general questions concerning racial prejudice were sufficient.

Finally, insofar as question (3) is concerned, the trial court did ask two questions in its stead: "(1) Would any juror have any personal problem in sitting a full two or three days or even four days for this trial?; [and] (2) Would any juror prefer to be excused in light of the possibility that his trial may go several days?" *People v. Caldwell, supra* at 3, 349 N.E.2d at 464. Although these two questions do not specifically address themselves to the possibility of sequestration as did the question suggested by petitioner at trial, they were sufficient to determine any possible bias or prejudice any juror had concerning participating in a long trial. Again, since no specific need was shown for a more particular inquiry on this subject, the generalized questions asked were sufficient to assure that "prejudice would be discovered if present." *Ristaino v. Ross, supra.*

Therefore, the trial court's conducting of the voir dire by itself and its refusal to ask certain questions presented by petitioner's counsel, did not deny petitioner his rights under the fourteenth amendment.

II

■ Petitioner's next argument concerns the failure of the state to turn over a statement made by a witness for the prosecution during pretrial discovery and at the trial. Since the statement in issue was not exculpatory, and could not be used for impeachment of the witness, the prosecution did not violate the requirements of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct.

1194, 10 L.Ed.2d 215 (1963). Thus, even if, as petitioner argues, his rights under Illinois discovery rules were violated, a question this court does not decide, no prejudice of a constitutional dimension occurred which would support the issuance of a writ of habeas corpus.

III

■ Petitioner's final argument concerns the propriety of the instructions given to the jury concerning the state's burden of proof on the issue of whether petitioner acted in self-defense. Thus, although petitioner agrees that the trial court's instructions were technically correct,[4] petitioner argues that he was entitled to an instruction specifically stating that the burden was on the state to prove beyond a reasonable doubt that petitioner did not act in self-defense.

Whatever the ultimate merit of petitioner's claim, it is this court's belief that the recent decisions in *Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976), and *Estelle v. Williams,* 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976), mandate that this court reject petitioner's claim as waived.[5] It appears that although the petitioner challenged the validity of the jury instructions given by the trial court on appeal, during the trial the defense did not object to the instructions given, nor tender the instruction claimed to be required. As held by the court in petitioner's direct appeal, under Illinois law, unless an instruction is actually tendered to the trial court, any objection concerning the failure to provide that instruction to the jury is waived. *People v. Caldwell, supra* 39 Ill.App.3d at

---

3. The case at bar involved the murder by a black man of another black man. In *Ristaino,* the defendant was black and the victim was white. The Supreme Court held this fact legally insufficient to require a specific inquiry into the venire's racial prejudices. Ipso facto, no specific inquiry was needed at petitioner's trial.

4. The trial court's instructions included instructions on: (1) the presumption of innocence; (2) the state's burden of proving defendant guilty beyond a reasonable doubt and that defendant need not prove his innocence; (3) the elements

of the crime of murder; (4) what the jury must find to hold the defendant guilty; and (5) the nature of a justifiable homicide defense. All these instructions are clearly proper and internally consistent.

5. It should be noted that this question of waiver is entirely distinct from the exhaustion requirement in a federal habeas corpus proceeding as discussed in note 1 *supra.*

6–7, 349 N.E.2d at 467. Exceptions are made only in cases of obvious constitutional error in the tendered instructions. And, since the tendered instructions in this case were all technically correct, with the omitted instruction merely being more specific, any error in not giving the most correct self-defense instruction was not obviously unconstitutional. *Id.*

This court recognizes that the traditional rule concerning waiver of constitutional claims in state trial proceedings was enunciated in *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), and that in order to find a waiver of a constitutional claim a district court hearing a habeas petition ordinarily must find that the petitioner "deliberately bypassed" the state court procedure which could have heard his claim. However, the aforementioned cases, particularly *Francis v. Henderson, supra,* have restricted the scope of the deliberate bypass rule of *Fay* and have expanded the areas in which waivers of constitutional rights can occur that preclude federal habeas relief.

In *Francis,* petitioner in his habeas petition challenged his conviction on the ground that the grand jury which indicted him was improperly constituted because Negroes were excluded from sitting on the jury. In his state court appeal, petitioner's challenge was rejected because he had failed to object to the composition of the grand jury prior to trial and thereby waived any objection to the unconstitutional nature of the panel. The Supreme Court, citing *Fay* only once, and for the proposition that "in some circumstances considerations of comity and concerns for the orderly administration of criminal justice require a federal court to forego the exercise of its habeas corpus power," 425 U.S. at 539, 96 S.Ct. at 1710, held that the federal district court was re-

quired to accept the state court's waiver rule and could not issue the writ of habeas corpus on the ground of an improperly constituted grand jury.

In reaching this conclusion, the Supreme Court relied upon *Davis v. United States,* 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973). In *Davis,* the Supreme Court had held that a federal prisoner seeking federal habeas corpus relief pursuant to 28 U.S.C. § 2255, could not challenge the composition of his grand jury unless an objection was made on that ground prior to trial. Thus, since rule 12 of the Federal Rules of Civil Procedure required a motion challenging the grand jury's composition prior to trial, failure to make such a timely motion waived the objection. The Court in *Francis* thereupon stated that:

> If, as *Davis* held, the federal courts must give effect to these important and legitimate concerns in section 2255 proceedings, then surely consideration of comity and federalism require that they give no less effect to the same clear interests when asked to overturn state criminal convictions.

425 U.S. at 541, 96 S.Ct. at 1711.

Whatever the ultimate affect *Francis* has on the *Fay v. Noia* deliberate bypass rule,[6] it appears clear that at a minimum the Supreme Court has enunciated a rule that where the federal courts recognize a waiver of a constitutional claim on the basis of a failure to file a timely objection, district courts hearing habeas petitions must likewise defer to similar state waiver rules. In the case at bar, the federal courts do recognize a waiver rule in cases of jury instructions. Thus, the Seventh Circuit in *United States v. Cowsen,* 530 F.2d 734 (7th Cir.), *cert. denied,* 426 U.S. 906, 96 S.Ct. 2227, 48 L.Ed.2d 831 (1976), stated that:

---

**6.** One court has gone so far as to state that *Francis* and *Estelle v. Williams,* 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976), limit the *Fay v. Noia* rule to those situations in which fundamental trial rights are concerned and in which society generally believes an attorney can not normally waive the right for his client. *Brown v. Warden,* 417 F.Supp. 970, 972–74 (N.D.Ill.1976). Moreover, in dissenting in

*Francis,* Justice Brennan characterizes the majority's opinion as either overruling *Fay* or denigrating the right to a constitutionally composed grand jury. 425 U.S. at 546–548, 96 S.Ct. at 1714 (Brennan, J., dissenting). In the case at bar, this court need not decide the complete contours of federal habeas corpus waiver law after *Francis.*

A trial judge does not commit error by refusing to give an inaccurate instruction. In the absence of the tender of a proper instruction on a point, his failure to instruct on that point will not warrant reversal unless it "constitutes basic and highly prejudicial error."

*Id.* at 738, quoting *United States v. Esquer,* 459 F.2d 431, 435 (7th Cir. 1972), *cert. denied,* 414 U.S. 1006, 94 S.Ct. 366, 38 L.Ed.2d 243 (1973) (citations omitted). *See also United States v. Cantu,* 501 F.2d 1019, 1021 (7th Cir. 1972).[7] As a matter of fact, in *United States v. Esquer, supra,* the court expressly addressed the issue presented in this cause and stated that unless a specific self-defense instruction was tendered to the trial court, the objection to the lack of that instruction was waived. 459 F.2d at 434–35. Therefore, since the federal courts recognize the same waiver rule as the state court concerning failure to tender a specific instruction, and because any error which might have occurred was not "obvious" or "basic" in light of the technically correct instructions actually given at trial, *Francis v. Henderson* requires this court to deem petitioner's claim as waived.

### IV

Accordingly, since there is no genuine issue of material fact and because petitioner's claims are without merit, respondent's motion for summary judgment is granted and the petition is dismissed.

It is so ordered.

---

**7.** It should be noted that it is irrelevant to this court's conclusion that *Davis* involved a federal habeas under 28 U.S.C. § 2255, while the cases cited in the text concerned direct appeals. There is no reason to believe that when the federal courts view a constitutional issue as waived for purposes of direct appeal that the same issue could then be raised in a federal habeas petition.