People of the State of Illinois, Plaintiff-Appellee, v. Gilbert Hall (Impleaded), Defendant-Appellant.

**Gen. No. 53,616.**

First District, First Division.
December 19, 1969.
Rehearing denied January 8, 1970.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Shelvin Singer and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Richard F. Sprague, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE ADESKO delivered the opinion of the court.

The defendant Gilbert Hall and his wife, Helen P. Hall, were jointly indicted for the murder of Fannie

Walker. After Helen Hall's trial was severed upon motion of her attorney, the case proceeded to trial against Gilbert Hall. Defendant was found guilty of voluntary manslaughter after a jury trial and was sentenced to a term of not less than eight nor more than twelve years in the penitentiary. On this appeal, the defendant has presented the following issues for review:

(1) Whether the State failed to prove the defendant guilty beyond a reasonable doubt;

(2) That error was committed when the jury was instructed upon and returned a verdict of voluntary manslaughter;

(3) Did the trial court err in refusing to allow defendant's testimony regarding his state of mind at the time of the killing?; and

(4) Did a statement of the prosecutor made in his opening statement unduly prejudice the jury so that the defendant was prevented from receiving a fair and impartial trial?

After a careful review of the evidence in light of the issues presented, we will elaborate upon the evidence presented in the record which we feel is most pertinent to our decision.

The State introduced the testimony of Floyd McDonald, who was an eyewitness to the occurrence in question. The witness testified that on the evening of June 9, 1967, he had occasion to be at a Leader Cleaners, located at 4235 West Roosevelt Rd., in Chicago. He entered the store a few minutes before 7:00 p. m. and first observed the defendant's wife, Helen P. Hall, standing behind the counter. He gave her some cleaning tickets and next observed the decedent, Fannie Walker, coming from the back of the store followed by the defendant who was carrying some dry-cleaned suits to the front of the cleaners. McDonald then stated that the decedent, as clerk of this store, picked up two bundles of

162

his shirts and placed them on the counter. The decedent then walked toward the back of the store and soon returned toward the front with a gun in her hand, stating to the defendant and his wife, "Get you, get out." According to McDonald, the defendant then ran from the store, reappearing in a few seconds with a gun in his hand and said to the decedent, "Drop it, drop it." The decedent responded by firing twice and defendant fired back. After the decedent slumped down behind the counter, the defendant took a purse and he and his wife ran out of the store. On cross-examination the witness insisted that no shots were fired by the decedent prior to the defendant's reentry into the store and demand that she drop the gun.

The State next established the movements of the defendant and his wife for the remainder of that evening, through a Marie Murdock, who was visited by them that evening and where a purse, two guns and Mrs. Hall's dress were left by them in this witness' apartment. This witness further testified as to the police recovery of these objects. The arresting officer gave testimony as to defendant's arrest on June 11, 1967, following a phone call from defendant's mother. The officer further testified to certain inculpatory statements made by defendant during his interrogation while in custody.

Helen P. Hall, the coindictee with the defendant, was called by the State after the court and her attorney had advised her of her rights. This witness established that she went to the location in question in the company of the defendant on June 9, 1967, sometime before 7:00 p. m. that evening. She stated that they entered the store and the defendant conversed with a couple in the store for about five to ten minutes, whereupon the couple left and the only individuals remaining were the witness, defendant and the decedent. Mrs. Hall testified further that her husband told the decedent he had lost his cleaning ticket to some clothes he had left in the store; that Mrs.

Walker went to look for the clothes and her husband followed her to the back of the premises; that she heard Mrs. Walker scream and she then walked behind the counter and that Mr. McDonald then walked into the store and handed her some cleaning tickets which she handed to the decedent after the latter had returned to the front of the store followed by defendant. The decedent then searched for McDonald's clothes and when the decedent returned to the counter she had a gun and told the defendant to leave the store. Then, according to Mrs. Hall, the defendant turned to leave and the deceased fired a shot, whereupon the defendant returned the fire from his own gun. After the decedent fell, the defendant left and then came back to the store, took the decedent's gun from her hand and then took his wife, with her purse, and left the store. The witness then testified as to the occurrences after leaving the store with defendant and proceeding to one of their friend's home and then to the Murdock apartment.

On cross-examination, Mrs. Hall recalled that she and her husband spoke with an individual for about five minutes in front of the cleaning store and they then proceeded into the store to speak to a couple whom defendant knew; that defendant and deceased looked for some clothes in the back of the store and that the scream of Mrs. Walker was not too loud; that when the deceased and defendant returned to the front of the store, Mr. McDonald was now present; that during this time the deceased did not ask either Mrs. Hall or defendant to leave the premises; that deceased returned to the back of the store and after coming up front, she had a gun and then told defendant to leave, and he turned toward the door. The deceased then fired five or six times at defendant. On redirect, the witness stated that defendant fired twice at the deceased.

In response to the State's case, the defendant testified as the only witness for the defense. He testified that be-

fore entering the cleaning store on the night in question, he conversed with a man named Johnson about four doors from the store. After conversing for five to ten minutes, defendant stated he proceeded down the street until he saw a friend of his and his wife in the Leader Cleaners Store at 4235 West Roosevelt Rd.; that he and his wife entered to speak with them and noticed the deceased, who was behind the counter of the store. Defendant stated he had known Mrs. Walker for about two months; that he had been in the store on numerous occasions. The defendant then asked his friends if they would buy tickets to a talent show and asked the same question of Mrs. Walker. The defendant's friend and his wife left after three to four minutes of conversation. Mrs. Walker responded that she would buy some tickets and then asked defendant to help bring some clothes to the front of the store. While in the back of the store, defendant noticed he had no tickets. The deceased then "started real loud" and told defendant he was always joking with her. Then defendant carried some clothes to the front of the store and noticed Mr. McDonald in the front of the store. The defendant's wife handed Fannie Walker McDonald's cleaning ticket and Mrs. Walker went to the back and picked up some clothes and returned to the front of the store with a gun in her hand, stating to the defendant to "Get out of here." Defendant said he turned to leave and the deceased fired, whereupon he turned around and pulled out his gun, asking Mrs. Walker twice to put down her gun. The deceased responded with another shot at defendant, who then "lifted the gun up that I had, shut my eyes and shot up." Defense counsel made several attempts to question defendant as to how he felt, thought and feared when he shot at the deceased. Objections to these questions were sustained with the court stating that defense counsel could not inquire into the defendant's mental state. Defendant then stated he took the deceased's gun, his

165

wife's purse and then fled the store with his wife. He further testified as to his whereabouts after leaving the store in substantially the same manner as his wife had previously testified.

On cross-examination, the defendant could only identify the individual he talked to on the street as Johnson and the person in the store as Johnnie, although the defendant claimed he knew the latter individual all of his life. He also stated he had run numerous errands for Mrs. Walker because she was a friend of his. Defendant further reiterated his story concerning the time when deceased returned with a gun pointed at him and the subsequent gunfire. He also maintained that he fired with the gun pointed up and his eyes closed; that when he looked at Mrs. Walker she was bleeding and that she subsequently slumped over onto the floor. The rest of his testimony corroborated the other witnesses as to the subsequent events of that evening.

In view of this evidence, the defendant contends that the State failed to sustain the burden of proving the defendant guilty beyond a reasonable doubt of the crime charged and that error was committed in allowing the jury to consider and return a voluntary manslaughter conviction. The defendant reasons that the State's occurrence witnesses were inconsistent in their version of the shooting and that one of the witnesses corroborated the defendant's testimony as to the events of June 9, 1967. Defendant's theory is that the evidence presented could only justify a finding of guilty of murder or an acquittal based on self-defense and that the instructions given to the jury precipitated a compromise verdict in the jurors' deliberations.

■■ The State argues that any inconsistency presented by the evidence goes to the credibility of the witnesses, which should be left to the jury for decision. In this regard we are mindful of cases cited by the State which establish that the issue of self-defense is a jury

question which should be respected by a reviewing court unless reasonable doubt exists. People v. Turner, 82 Ill App2d 10, 226 NE2d 667 (1967) ; People v. Owens, 73 Ill App2d 108, 219 NE2d 733 (1966). The State further argues, as the defendant has done, that the submission of a voluntary manslaughter issue to the jury depends upon the evidence presented. People v. McMurry, 64 Ill App2d 248, 212 NE2d 7 (1965) ; People v. Wheeler, 57 Ill App2d 452, 206 NE2d 729 (1965).

■ With these principles in mind and after extensive review of the evidence as presented, we conclude that reversible error was committed in the trial of this cause. Assuming the jury accepted the testimony of Floyd McDonald, this evidence shows that the defendant did not fire his gun until he had asked deceased to drop her weapon and he had been fired upon by the deceased. If defendant did in fact leave the store and quickly reappear with his weapon, this is not sufficient to show that he was the aggressor in this situation, because his wife had remained on the premises with a woman who was brandishing a revolver. On the other hand, if the jury accepted Mrs. Hall's testimony, then the evidence would show that the decedent fired at defendant, who was obeying the order to leave and then turned with his gun and returned the fire. This was substantially the defendant's version of the occurrence, only varying in that he fired after a second shot by the decedent and his requests that she drop her gun.

■ In our opinion this evidence sufficiently raised the defense of self-defense to the murder charge and that a reasonable doubt exists as to the State's evidence in rebutting this defense. We agree with the defendant's contention that the robbery motive which the State attempted to prove was without merit. The rule is that the judgment of conviction must be sustained on evidence which removes all reasonable doubt, as in People

v. Coulson, 13 Ill2d 290, 149 NE2d 96 (1958), where the Supreme Court stated, at page 296:

"[T]he duty of this court [is] to examine the evidence in a criminal case, and if it is so improbable or unsatisfactory as to raise a serious doubt of defendant's guilt the conviction will be reversed."

See also People v. Sheppard, 402 Ill 347, 83 NE2d 587 (1949); People v. Tribbett, 41 Ill2d 267, 242 NE2d 249 (1968).

██ ██ Furthermore, we are of the opinion that the court improperly submitted the issue of voluntary manslaughter to the jury, because the evidence cannot be considered as creating a heat of passion situation that justified such a verdict. People v. Smith, 404 Ill 350, 88 NE2d 834 (1949). This record presents a situation of either guilty of murder or a finding of innocence by reason of self-defense. The defendant's contention that the jury reached a compromise verdict on voluntary manslaughter is well taken. We conclude that reversible error was committed in this regard. The applicable rule is that where a jury has been erroneously instructed as to voluntary manslaughter and has returned a verdict for that charge, the cause will be reversed without remand since the jury has acquitted defendant upon the murder charge. People v. Smith, supra; People v. Newman, 360 Ill 226, 195 NE 645 (1935); People v. McMurry, supra.

Based on our decision for reversal of this case, it is unnecessary to discuss the third and fourth issues raised by defendant. Therefore, we conclude that the judgment of the Circuit Court of Cook County is reversed.

Judgment reversed.

MURPHY and BURMAN, JJ., concur.