THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MICHAEL LYNCH, Defendant-Appellant.

First District (4th Division)    No. 62334

Opinion filed November 17, 1976.

James Geis, of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Joan S. Cherry, and Jeffrey Singer, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE JOHNSON delivered the opinion of the court:

After a jury trial, Michael Lynch was found guilty of murder and sentenced to a term of 25 to 50 years of imprisonment. He appeals from the judgment and raises the following issues for review: (1) whether the State proved the defendant's guilt beyond a reasonable doubt; (2) whether the court erred by failing to give an instruction not tendered by the defendant; and (3) whether the defendant's sentence was excessive.

The record reveals that several witnesses were called by the State. The first witness, Effie Mae Alexander (cousin of the deceased), testified that on February 10, 1974, at about 10:30 p.m., the deceased stopped by her apartment at 3847 South Michigan and telephoned his wife. He then conversed with the witness and friends before leaving for home around midnight.

The next witness, Robert Torry (son of the deceased), testified that he

was sitting in the kitchen eating dinner when he heard three gunshots. He rushed to the window where he saw a man running toward the stairs, but he also noticed his father lying 10 feet from the apartment door. After the witness stopped his mother from going to the door and called the police, he went outside to assist his father.

Claudia Mae Torry (wife of the deceased) corroborated her son's testimony. Then Officer Alphonse Rochon testified, after refreshing his recollection, and explained how he arrived at the scene, called for a squadrol, and removed the deceased to Michael Reese Hospital.

The next witness called by the State was Joyce Bivens who testified that on February 10, 1974, she was visiting her sister, Linda Bivens, who lives at 3919 South Federal. According to the witness, her sister was having a birthday party for her son. Her sister, several friends, including the defendant, and two children were in the apartment. When the party ended at about 7 p.m., the witness testified that she cleaned up and then sat down and talked and watched television with the other guests. Around 9 p.m., the witness went to bed, but Alice Patterson woke her around midnight. After getting out of bed, she walked into the front room where she found Michael, her sister, and another guest. The witness asked Michael what happened and he said "he had just shot a * * * [man]." Joyce testified that Michael had a gun in his hand and appeared a little shaky. After making these inquiries, the witness went back to bed but she got up to get a bottle of milk for her baby later that night. When she walked into the front room, several people were preparing to leave and she noticed that the defendant, a member of this group, had changed clothes.

The next morning the witness got up around 11 a.m., and had another discussion with the defendant, her sister, and another man in her front room. She asked Michael what really happened and was told by the accused that he had an altercation with a man on the elevator and he shot the man in the head three times before the man could hurt him.

Alice Patterson testified that she was also present at the birthday party on February 10, 1974. When the party ended, the witness stated that the guests talked and watched television. Around 11:30 p.m., Michael left the apartment to get something to drink and, shortly thereafter, Ms. Patterson heard three shots as she walked into the bathroom. When the witness walked out of the bathroom, Michael knocked on the front door and she opened it and he entered the apartment. According to the witness, the defendant walked into the bathroom, emptied the bullets from his gun into the toilet and telephoned his wife. Lynch told his wife to come over to Linda's house with a change of clothes because he was in trouble. After the phone call was made, Ms. Patterson got Linda and Joyce out of bed and then she asked the defendant what had happened and he told her

some gangfighters attempted to take his coat so he shot the man in the head three times. While they conversed, the area became filled with police so Michael called his wife again and asked her to hurry. When Cynthia, Michael's wife, arrived, the defendant changed clothes, put the clothes he was wearing in a brown paper bag, and dropped them into an incinerator. Then Ms. Patterson called a cab and the group left the apartment, after Cynthia placed two guns, the one she brought and the one Michael had in his possession, in a wig.

Finally, Eupil Choi, a pathologist, testified that death was caused by a bullet wound to the head that caused trauma to the brain. At the close of the State's case, defendant's counsel moved for a directed verdict which was denied, and the case went to the jury because the defendant did not call any witnesses.

The defendant argues that the State failed to prove him guilty of murder beyond a reasonable doubt. Murder is committed when a person kills another individual without lawful justification if, in performing the acts which cause the death, he either intends to kill or do great bodily harm to that individual or knows that such acts will cause death to that individual. (Ill. Rev. Stat. 1973, ch. 38, par. 9—1.) The evidence establishes that the deceased left his cousin's apartment around midnight and walked home. Upon arriving at his apartment, he was found seriously wounded, lying 10 feet from his door with a bullet wound in the head. The evidence also establishes that the defendant left apartment 804 in the victim's building around 11:30 p.m., and he returned to the apartment shortly after an occupant of the apartment heard three gunshots. Upon the defendant's return, the evidence reveals that he emptied bullets from his gun, called his wife, and admitted that he shot a man who tried to harm him. After changing his clothes and dropping them into an incinerator, the defendant left the scene of the crime. The following day the defendant admitted, a second time, that he shot a man in the head, and the medical evidence establishes the cause of death as a bullet wound to the head. We think that the evidence brings the conduct of the accused, which culminated in the death of the deceased, within the purview of the prohibition in section 9—1 of the Criminal Code.

■■■ Notwithstanding the preceding, the defendant argues that the State's evidence raises the affirmative defense of self-defense and the circumstantial evidence of flight and concealment was insufficient to prove his guilt beyond a reasonable doubt. Although evidence of self-defense may be raised by the State's evidence (Ill. Rev. Stat. 1973, ch. 38, par. 3—2(a)), the law is clear that the mere fact that the evidence raises the issue of self-defense does not ipso facto elevate defendant's claim to the level of reasonable doubt when evidence is viewed in light of all of the other facts and circumstances of the case. (*People v. Benedik* (1974), 56

Ill. 2d 306, 309, 307 N.E.2d 382.) While the law makes no legal distinction between direct and circumstantial evidence as to the weight and effect thereof (*People v. Turner* (1976), 35 Ill. App. 3d 550, 564, 342 N.E.2d 158; *People v. Robinson* (1958), 14 Ill. 2d 325, 331, 153 N.E.2d 65), it only requires, even when the evidence is entirely circumstantial, that the guilt of the accused be thoroughly established to exclude every other reasonable hypothesis. (*People v. Lewellen* (1969), 43 Ill. 2d 74, 78, 250 N.E.2d 651; *People v. Turner* (1976), 35 Ill. App. 3d 550, 564, 342 N.E.2d 158.) We think the evidence in this case was substantial and legally sufficient to comply with the standards set down in the cases. The jury was entitled to disbelieve the evidence that the defendant acted in self-defense and they could reach this conclusion when they considered the evidence: the wound inflicted to the victim's body; the defendant's destruction and concealment of evidence; and the defendant's flight after the crime. It is within the province of the jury to judge the credibility of witnesses, weigh the testimony, and determine matters of fact. Courts of review will not disturb the findings of the jury unless the evidence is so unsatisfactory as to justify a reasonable doubt. (*People v. Benedik* (1974), 56 Ill. 2d 306, 310, 307 N.E.2d 382; *People v. Johnson* (1975), 33 Ill. App. 3d 957, 960, 338 N.E.2d 895; *People v. Turner* (1976), 35 Ill. App. 3d 550, 565, 342 N.E.2d 158.) In our opinion, the evidence was so substantial that no reasonable doubt exists as to the guilt of the defendant.

■■ ■ The defendant's next contention is that the court erred by failing to tender a self-defense instruction sua sponte. He points out that the court gave instructions, IPI Criminal Nos. 7.01 and 7.02, which enumerate the elements of the offense which must be proved in order to sustain a murder charge. In addition, the court gave IPI Criminal Instruction No. 24.06 which delineates when a person is justified in using force. The defendant submits that IPI Criminal Instruction No. 25.05, which requires that the State prove that the defendant was not justified in the force that he used, was the appropriate instruction to be given. We note, however, that the record reveals that the defendant did not object to the instructions that were given nor did he tender IPI Criminal Instruction No. 25.05. The law is clear that the failure to object to proposed instructions operates as a waiver of any objection (*People v. Mallett* (1970), 45 Ill. 2d 388, 397, 259 N.E.2d 241; *People v. Wright* (1975), 32 Ill. App. 3d 736, 743, 336 N.E.2d 18), and the trial court is under no duty to give instructions not requested by counsel (*People v. Bell* (1975), 27 Ill. App. 3d 171, 177, 326 N.E.2d 507; *People v. Hall* (1975), 25 Ill. App. 3d 992, 1001, 324 N.E.2d 50), with the exception of certain instructions that must be given in all criminal cases. (*People v. Doss* (1975), 26 Ill. App. 3d 1, 14, 324 N.E.2d 210.) In light of the fact that defendant failed to object to the instructions that were given and failed to tender the appropriate

instruction to the court, we hold that there was no error. While we are aware of the cases (*People v. Wright* (1975), 32 Ill. App. 3d 736, 336 N.E.2d 18; *People v. Wright* (1974), 24 Ill. App. 3d 536, 321 N.E.2d 52), relied on by the defendant with holdings contrary to the one in the instant case, we find them unpersuasive.

■■ Finally, the defendant alleges that his sentence was excessive. The Code sets a minimum term of 14 years, unless the court, having regard to the nature, circumstances, and history and character of the defendant, sets a higher minimum term. (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—1(c)(1).) We think the court considered the defendant's age as well as the nature and seriousness of the offense. In light of the fact that the sentence imposed was within the limits prescribed by the statute, and given the fact that the court did not abuse its discretion, we hold that the sentence was proper. *People v. King* (1976), 43 Ill. App. 3d 540, 357 N.E.2d 579.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

ADESKO and BURMAN, JJ., concur.