THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GEORGE FARMER, Defendant-Appellant.

Fifth District   No. 75-222

Opinion filed June 20, 1977.

KARNS, J., dissenting.

Michael J. Rosborough and Ann Hilbert Blandford, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Robert H. Howerton, State's Attorney, of Marion (Bruce D. Irish and Raymond F. Buckley, Jr., both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE CARTER delivered the opinion of the court:

George Farmer, defendant, appeals from a judgment of the Circuit Court of Williamson County rendered in a jury trial finding defendant guilty of murder. The defendant was sentenced to a term of from 20 to 60 years.

Defendant presents numerous issues for review, some of which require us to reverse his conviction and order a new trial. The issues are as follows: whether the trial court erred in refusing to instruct the jury as to the lesser included offense of involuntary manslaughter; whether the trial court erred in giving an instruction on "transferred intent"; whether the jury should have been submitted the issue of defendant's sanity; whether the court should have admitted into evidence a photograph of the deceased's head; whether the defendant was prejudiced by remarks made by the State in its closing argument; whether defendant's statements made to his brother before his arrest should have been admitted; whether the sentence was excessive; and whether a statement made by a juror in front of several other jurors requires a new trial.

The incident on which the conviction was based occurred just outside the defendant's home in Johnston City. The only evidence regarding what actually transpired when Charles Darter was shot was defendant's account of the incident. Defendant's testimony regarding the shooting was as follows: defendant's daughter had gone out the night before and had failed to return home; defendant was worried about the whereabouts of his daughter the day of the shooting; he had been cleaning his gun when he heard a car honk in front of his house; he then stuck the gun in his

belt and walked out to the car; after opening the front door of the car he sat on the front seat; defendant did not know the young man driving the car; the young man told defendant that he had taken his daughter to the Town of Energy the night before; the father then asked the young man to go and bring his daughter home and the young man replied that he would not; in an attempt to coerce or frighten the young man into bringing his daughter home, the father pulled his gun, pointed it at the boy and pulled back on the hammer; defendant had previously testified that the revolver was defective in that the safety catch did not work; he testified that the gun was oily as a result of just having cleaned it. Finally, defendant testified that the hammer "slipped off of my hand, and the gun went off." Darter, the young man, died from the gunshot wound.

■■   The importance of defendant's rendition lies in the fact that the discharge of the gun resulted from a slip, an unintentional act on defendant's part. The forces actually causing death were set in motion unintentionally. According to defendant's testimony, the only intent behind defendant's actions was to scare the boy. This is simply not the sort of intent required to support a conviction for murder; however, this would be sufficient to support a manslaughter conviction and failure to instruct the jury on manslaughter when requested by the defendant and refused by the trial court requires a new trial. This testimony of defendant, if believed by the jury would be sufficient to reduce the charge to manslaughter and hence, the defendant was entitled to an instruction on manslaughter.

The Supreme Court of Illinois has addressed itself to the problems of distinguishing between murder and manslaughter. In the case of *People v. Davis*, 35 Ill. 2d 55, 60-61, 219 N.E.2d 468, the court held:

> "The common-law distinctions between murder and manslaughter have always involved considerations of degree [citation] and similar considerations appear in the Code definitions. * * *
>
> * * *
>
> Where, as here, the evidence is conflicting, it is for the jury to decide under proper instructions whether a homicide was murder or manslaughter, or whether it was justified as self-defense."

Where the evidence on an issue is legally sufficient and is in conflict or more than one inference may reasonably be drawn therefrom, the question is for the jury. It is the province of the jury to decide whether the accused is guilty of manslaughter or murder if there is any evidence which tends to prove the lesser crime. 21 Ill. L. & Prac. Homicide §132 (1956); *People v. Ryan*, 9 Ill. 2d 467, 138 N.E.2d 516, 521; *People v. Dortch*, 20 Ill. App. 3d 911, 314 N.E.2d 324.

In *People v. Peery*, 11 Ill. App. 3d 730, 297 N.E.2d 643, defendant was

convicted of stabbing his wife. Defendant and his wife were arguing. Defendant testified that he had no memory of stabbing his wife but he did remember that she threatened to kill him and that she reached into the sink and struck defendant on the head with a heavy object. Defendant was denied a manslaughter instruction. In that case the court held:

"Even though the evidence was conflicting, the defendant's trial testimony, if believed by the jury, was sufficient to create an issue of fact * * *.

* * * it is the province of the jury, and not the judge, to determine the guilt or innocence of the accused and also to determine whether the accused is guilty of murder or the lesser crime of manslaughter, 'if there is any evidence which tends to prove the lesser rather than the greater crime.' [Citation.]

The province of the jury to determine the weight to be given the testimony of the various witnesses was definitely invaded by the refusal of the court to give the manslaughter instruction offered by the defendant." 11 Ill. App. 3d 730, 734.

In *People v. Kelly*, 24 Ill. App. 3d 1018, 332 N.E.2d 521, the defendant testified that his intention was to fire a warning shot in the direction of the victim and not to hit him. However, the defendant stated that the gun was pointed in victim's direction when the accused fired the fatal shot. The court in the *Kelly* case at 24 Ill. App. 3d 1018, 1023, stated:

"Involuntary manslaughter is an offense which happens without the intent to inflict injury, and death results from acts performed recklessly. [Citation.]

It is a well-established rule of common law, incorporated by judicial adoption into the jurisprudence of Illinois, that the jury may, under an indictment charging murder, return a verdict convicting the accused of any lower degree or grades of homicide included in the charge, provided there is evidence to support the lower grade or degree."

The court further stated:

"It was a question for the jury whether firing a gun aimed toward the decedent was reckless performance of an act likely to cause death or bodily harm to a person 18 feet away. * * *."

Defendant was accused of murder in the case of *People v. Bolden*, 103 Ill. App. 2d 377, 243 N.E.2d 687. It was undisputed that the victim died of a stab wound and that defendant held the knife which inflicted the mortal wound. In dispute was whether the death was caused intentionally or recklessly in the course of a game.

Depending upon which version of the facts the jury found to be most convincing, there was sufficient evidence in the record to support a verdict of either murder or involuntary manslaughter. The court granted

a new trial because the trial court failed to give a complete definition of involuntary manslaughter, which is as follows:

"Involuntary manslaughter is an offense which happens without the intent to inflict injury and death results from acts performed recklessly.\* \* \* Furthermore, the gist of the offense of involuntary manslaughter is reckless performance of an act likely to cause death."

■■■ In the case at bar defendant testified that his hand slipped off the hammer of the gun. He had no intent to even shoot the gun. In *Kelly* defendant intended to shoot his gun but he claimed he never intended to hit his victim. That defendant's conduct in pointing a pistol at the young man was reckless cannot be denied, but whether in doing so defendant had the requisite mental intent to commit murder is a question of fact for the jury to decide. The jury may not believe defendant's account that the shooting was unintentional, but it is a matter that the jury must decide upon proper instruction from the court. It matters not that defendant's testimony was impeached, contradicted and inconsistent with a prior statement concerning the incident. As the court stated in *People v. Boisvert*, 27 Ill. App. 3d 35, 325 N.E.2d 644:

"In our view the most satisfactory trial solution would be for the judge to liberally apply the rules respecting the giving of instructions on lesser included offenses when requested by a defendant so as to give them freely in cases where there is any evidence fairly tending to bear upon the issue of that offense even though the evidence may be weak, insufficient, inconsistent or of doubtful credibility. [Citations]. Even in cases in which there is no direct testimony that could establish a lesser included offense but where the jury could fairly infer that the lesser offense had been committed the defendant should be given the benefit of the doubt and the instruction as to the lesser included offense should be given in respect for the jury's central role in our jurisprudence." [Citations.]

■■ The jury need not accept defendant's version of the story where there is ample evidence to support the murder conviction, but the choice is for the jury not the court and if there is any evidence in the record, no matter how weak or inconsistent with the rest of the record, the jury should be given the instruction on the lesser offense. It all boils down to a matter of credibility—will the jury believe defendant's account of what happened? The court should not strip the jury of its traditional function.

The following non-IPI instruction taken from the case of *People v. Hickman*, 9 Ill. App. 39, 291 N.E.2d 523, was submitted by the State and given by the court:

"If a person commits a wrongful act, and as a result of that act, an

unintentional wrong occurs, he is responsible for that unintentional wrong."

■■■ The *Hickman* case dealt with the doctrine of transferred intent, and the defendant pleaded guilty to the offense of aggravated battery. That case held that the doctrine of transferred intent was applicable where a defendant intended to shoot his wife's brother and by mistake shot his wife who stepped into the line of fire. This instruction was not applicable to the facts of the instant case. However, this instruction, which was not objected to by the defendant, was at worst harmless where it was not misleading under the circumstances of this case. Due to our finding that the refusal to give an involuntary manslaughter instruction constitutes reversible error, the question of People's Instruction No. 8 becomes moot.

Defendant was denied a fair trial, in that the jury was not fully or properly instructed. For this reason the conviction must be reversed and remanded for a new trial. Since some of the balance of defendant's contentions of error might reoccur in a new trial, we shall briefly address ourselves to them.

At the trial the defendant relied on a defense of insanity and he offered the testimony of several witnesses besides himself on the issue. The testimony included defendant's marital difficulties, his drinking problems, outbursts of temper, his voluntary admission into psychiatric care, and a recent incident in which his daughter was allegedly raped. The court ruled as a matter of law that the defendant had not raised the issue of insanity and the court ordered the jury not to consider that defense.

Guidelines for determining if the issue of sanity has been raised were provided by our supreme court in *People v. Smothers,* 55 Ill. 2d 172, 174, 302 N.E.2d 324:

"This court has held that all men are presumed to be sane and that, in order to present the issue of the accused's insanity, the evidence must raise a reasonable doubt of his sanity at the time of the commission of the offense. [Citation.] Our earlier cases have permitted lay testimony, including the expression of opinions, concerning a defendant's insanity. [Citations.] In *People v. Childs,* 51 Ill. 2d 247, we held that expert testimony was not required to raise the issue of sanity, and upon examination of the authorities cited by the parties, and those collected at 17 A.L.R.3d 146, we adhere to that position." 55 Ill. 2d 172, 174.

■■ In this case, neither defendant's brother nor his own daughter who testified on the issue thought that the defendant was insane at the time of the incident. Defendant, himself, took the stand and proclaimed his sanity. There were no expert witnesses on the issue and no one testified that they thought defendant was insane at the time of the incident or at

any other time. In our opinion, the record does not contain sufficient evidence to raise a reasonable doubt about defendant's sanity, and therefore the trial court properly ruled on the matter.

Defendant contends that the admission into evidence of a photograph of the deceased's head was prejudicial error in that it was highly inflammatory and not probative of any issue in the case. When a trial is upon a plea of not guilty, the State is permitted to go ahead and introduce its full proof of the crime charged. (*People v. Nicholls*, 42 Ill. 2d 91, 245 N.E.2d 771, *cert. denied*, 396 U.S. 1016, 24 L. Ed. 2d 507, 90 S. Ct. 578.) In the *Nicholls* case the defendant was willing to stipulate to whatever a photograph of the victim of a murder might show. The victim had been shot many times in the head and body. The court stated the following to be the rule:

> "[T]he admission of photographs of a victim is within the discretion of the trial court and the exercise of that discretion will not be interfered with unless it is shown there has been an abuse to the accused's prejudice." 42 Ill. 2d 91, 99.

The court held that there was no error in admitting into evidence photographs of the murdered victim. *People v. Nicholls*, 42 Ill. 2d 91, 245 N.E.2d 771. See also *People v. Field*, 13 Ill. App. 3d 74, 299 N.E.2d 754.

■■ It is our opinion that the trial court did not abuse its discretion in allowing the photograph into evidence.

■■ The remainder of defendant's contentions of error must fail on the grounds that defendant has waived them in this court. The general rule is that failure to include an issue in the written motion for a new trial constitutes a waiver of it. (*People v. Pickett*, 54 Ill. 2d 280, 296 N.E.2d 856.) We adhere to that principle and deem defendant's contentions of error waived, as they were not included in his motion for a new trial. In addition, we find that none of the alleged errors are so substantial that justice would require that we consider them despite the waiver.

Based on the foregoing reasons, the judgment of the Circuit Court of Williamson County is reversed and the cause is remanded for a new trial.

Reversed and remanded.

EBERSPACHER, J., concurs.

Mr. JUSTICE KARNS, dissenting:

I would affirm the conviction. Immediately after the shooting, defendant telephoned his brother requesting him to come to his house. When he arrived, according to the brother's testimony, the defendant said "* * * that the boy had come to the house and gave him some static about his daughter and he just blew his stack and shot him." Defendant

testified he did not know the deceased. When Darter refused to go to Energy and bring the daughter home, defendant said he pulled back the hammer of the revolver "to frighten the boy to bring my daughter home." Darter had told defendant that he had taken his daughter to a girl friend's house.

In response to the State's discovery motion, defendant replied that his only defense would be insanity. In his opening statement he indicated his only defense was that he was insane at the time of the shooting. In fact that was his only defense unless we elevate the isolated remark that "the hammer slipped" to a defense of accidental shooting and, therefore, involuntary manslaughter. Defendant admitted that he had never told anyone prior to trial, including his brother, that the shooting was an accident.

Additionally, the physical evidence belies defendant's assertion that the shooting was an accident. According to the testimony of police officer Vick, the weapon used was a single-action .22-caliber revolver. The hammer must be cocked manually and barring a malfunction, such a weapon could only be fired by squeezing the trigger, not by simply releasing the hammer.

In *People v. Latimer,* 35 Ill. 2d 178, 220 N.E.2d 314 (1966), the defendant testified, contrary to his earlier statements, that he did not intend to fire the fatal shot. The court sustained the refusal to give a tendered involuntary manslaughter instruction, noting that the record as a whole did not support defendant's theory that the shooting was an accident. I find the facts here strikingly similar.

I would further note that according to defendant's testimony, he was attempting to coerce the deceased at gun point to perform an act he had a right to refuse to perform. In other words, Darter was killed while defendant was committing the offense of intimidation (Ill. Rev. Stat. 1975, ch. 38, par. 12—6(a)(1)), a forcible felony (Ill. Rev. Stat. 1975, ch. 38, par. 2—8). Defendant would be guilty of felony murder, even if the act of discharging the gun were performed accidentally. *People v. Rosochacki,* 41 Ill. 2d 483, 244 N.E.2d 136 (1969).