THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN LEE TILLER, Defendant-Appellant.

Fifth District   No. 76-75

Opinion filed June 15, 1978.—Rehearing denied July 19, 1978.

786

G. MORAN, J., dissenting.

Michael J. Rosborough and Phillip A. Kramer, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Clyde L. Kuehn, State's Attorney, of Belleville (Bruce D. Irish and Keith P. Vanden Dooren, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE KARNS delivered the opinion of the court:

Defendant, John Lee Tiller, appeals from a judgment of the Circuit Court of St. Clair County entered upon a jury verdict finding him guilty of the offenses of murder and attempt murder. The charges arose out of a shooting incident occurring in the early morning hours of Sunday, May 25, 1975, in East St. Louis, Illinois, during which a police officer was fatally wounded. The defendant was subsequently sentenced to serve from 100 to 200 years for the murder conviction. He was not sentenced on the attempt murder conviction.

At 8:08 a.m. on Sunday, May 25, 1975, the East St. Louis police department received a call reporting a domestic disturbance involving a weapon at Apartment 28-C in the John DeShields housing project. Two officers, Harvey and Haire, were dispatched to the scene where they knocked on the back door of the apartment and asked that the occupant come out to talk. A voice from within the apartment responded that he had not called the police and that he had no time to talk. The officers then proceeded to the front of the building where they encountered the defendant's wife, who had placed the call, defendant's sister-in-law and several children. While the officers spoke with the complainant in the front of the building, a voice from within the apartment stated, "Nobody move."

The officers radioed for assistance and Officer Clark Wren responded. When Wren arrived he positioned himself at the corner of a nearby building. As he peered around the side of the building, his police hat was shot from his head. The defendant was observed with a rifle situated in an upstairs window. Several police cars were then dispatched to the scene. Among them was "Edward 20" carrying three officers, Sands, Waggaman and Farmer. The driver, Manuel Farmer III, obtained permission to remove a carbine from the trunk of the squad car. After doing so, Farmer positioned himself behind the automobile and was in the process of loading the carbine when a shot was fired from Apartment 28-C. Farmer slumped into Waggaman's arms and stated that he had been shot. As Sands reached into the police car to radio for an ambulance, another shot

was fired that hit the center of the windshield. He was immediately transported to St. Mary's Hospital in an ambulance where he was pronounced dead on arrival.

Dr. Roman Patrick performed an autopsy on Officer Farmer and testified at trial that the cause of death was a bullet which entered deceased's body at the left collarbone, struck the pulmonary artery and lodged in the back of the body on the right side just below the ninth rib. Dr. Patrick further stated that judging from its path through the body, the bullet came from an upward position. Ballistics tests proved that the fatal shot was fired from defendant's rifle.

The State produced six police officers who had witnessed the major portion of the shooting that morning. These witnesses confirmed that subsequent to Officer Farmer's injury the police officers present opened fire on the apartment building. It was estimated that at least 100 shots and several tear gas shells were fired into the premises. Meanwhile, several requests were made for the defendant to surrender. Finally, defendant threw his rifle on the front lawn and asked to see his wife and son. Mrs. Tiller and the child appeared at the front of the building and after a few minutes Mrs. Tiller entered the apartment. A short time later defendant emerged from the building holding his wife in front of him as a shield. The defendant was placed under arrest at 9:50 a.m., approximately one hour and 15 minutes after officer Farmer had been shot. While en route to the St. Clair County jail, defendant commenced talking about the incident. The driver, Officer Conrad Williams, then asked the defendant why he had shot Farmer. Defendant responded that he could have shot several policemen, that in fact, he had Williams in his sight on two separate occasions.

The defense consisted of testimony by defendant, defendant's wife, and defendant's sister-in-law. Defendant testified that the previous evening he had been threatened by an off-duty East St. Louis policeman, Alonzo Payne, at a tavern. Defendant complained to the police about the incident but received no satisfaction. He later phoned St. Clair County Sheriff's office, but nothing became of the complaint. Payne, on the other hand, denied he had ever threatened defendant or exposed a gun to intimidate defendant. When Tiller arrived home at approximately 6 a.m., he and his wife became engaged in a fight. After defendant tore the phone from the wall and struck his wife several times, Mrs. Tiller ran to Barbara Tiller's apartment at 30-C John DeShields. The defendant followed her to get his rifle which he had previously placed behind a water heater. The two quarreled over the gun and a shot was fired. Defendant returned home with the gun at which time Mrs. Tiller phoned the police. Defendant stated that he was taking a bath when the police arrived. He further testified that the police refused to answer when he asked why they

were kicking at his door. He stated that about that time he heard a loud shot or explosion, that there ensued a lot of shooting and that finally, he intentionally shot at Wren's hat in order to scare him. Defendant asserted that the police never requested him to surrender and that he felt they wanted to kill him. On direct examination defendant recalled that he fired several shots; however, on cross-examination the defendant stated that he did not remember shooting at the deceased.

Mary Tiller, the defendant's wife, testified that she never heard anyone in the apartment yell, "Don't move." She believed the first shot came from farther down the street. Mrs. Tiller recounted how twice in the previous two years the defendant had been harassed by the police and that while inside the apartment with him during this incident the defendant told her he was afraid the police wanted to kill him.

Barbara Tiller, the defendant's sister-in-law, testified that the defendant said, "get back," rather than "nobody move." The witness also stated that after the shooting started defendant hollered, "Leave me alone. You want to kill me because I am a killer." Both Mary and Barbara Tiller were impeached by their statements made at the police station on May 25, 1975 at which time each had acknowledged that the defendant had stated, "don't move."

The defendant assigns as error the refusal of the trial court to give his tendered instructions on voluntary manslaughter, involuntary manslaughter and aggravated assault, the latter as an included offense to the charge of attempt murder; the failure of the trial court to incorporate into a single issues instruction for the offenses of murder and attempt murder the issue of defendant's justifiable use of force; the refusal of the court to admit a videotape depicting the extensive damage to defendant's apartment caused by the police gunfire; and the sentence of 100 to 200 which is alleged to be excessive.

During the instructions conference, defense counsel tendered Illinois Pattern Jury Instructions on justifiable use of force, voluntary and involuntary manslaughter and aggravated assault. The court refused all but the instructions on self-defense. Prior to the court's acceptance of the self-defense instruction, defense counsel had tendered IPI Criminal Nos. 7.05 and 7.06 corresponding to the statutory definition of voluntary manslaughter codified in section 9—2(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 9—2(b)) and the issues instruction thereon. The court refused these instructions on the basis that defendant had no recollection of shooting at the deceased. Defendant first contends that the court erred in refusing these instructions.

■■■ The courts of our State have often declared that to justify the giving of an instruction all that need be shown is a slight amount of evidence in support of the underlying theory of defense. (*People v. Sykes,*

45 Ill. App. 3d 674, 359 N.E.2d 897 (5th Dist. 1977).) Furthermore, a defendant is entitled to have submitted to the jury an instruction on a lesser included offense where there is any evidence in the record which, if believed, would so reduce the crime. (*People v. Joyner*, 50 Ill. 2d 302, 278 N.E.2d 756 (1972); *People v. Jenkins*, 30 Ill. App. 3d 1034, 333 N.E.2d 497 (4th Dist. 1975).) In addition, it has been stated that "[t]he accused is entitled to the benefit of any defense based on the evidence even though such defense is inconsistent with his own testimony" (*People v. Thompson*, 35 Ill. App. 3d 773, 776, 342 N.E.2d 445, 448 (2d Dist. 1976)); however, there must be some evidence to support the lesser included offense or it is error to instruct thereon. *People v. Handley*, 51 Ill. 2d 229, 282 N.E.2d 131 (1972).

Section 9—2(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 9—2(b)) defines voluntary manslaughter as follows:

> "A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code, but his belief is unreasonable."

It is clear that nothing in the State's evidence would support the giving of any of the instructions tendered by the defense. All the State's evidence tended to prove that the defendant, unprovoked by any conduct on the part of the police, fired at Officer Wren and fired the shot that killed Officer Farmer. The defense of justifiable use of force is an affirmative defense under sections 3—2 and 7—14 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, pars. 3—2, 7—14), and were it not for defendant's testimony that he fired in self-defense because the officers were trying to kill him, there would have been no evidence justifying the giving of the self-defense instruction.

On direct examination, the defendant testified that when the police arrived at his apartment, he assumed it was in response to his wife's phone call after their initial argument at their home and subsequent argument concerning the rifle at his sister-in-law's house. He did not respond. Later, while taking a bath he heard a "loud boom," which he later described as a shot. He went to the window and asked what the police wanted. They said nothing, according to his testimony, and "the next thing I know there was a lot of shooting going on." Some two to five minutes after the shooting started, he testified he fired the shot that went through Officer Wren's hat after asking and being refused permission to come out of his apartment building. He testified he saw the person later determined to be Officer Farmer with a rifle. On direct examination, he testified he remembered firing the shot that killed Farmer after tear gas and shots had been fired into the apartment; however, this was only a concession that a

shot from his rifle did in fact strike Farmer as he denied any recollection of firing at Farmer at the time of the incident. The shooting lasted about 40 minutes and as many as 500 rounds were fired into the building. In response to a question on cross-examination, defendant testified that he did not remember shooting at Officer Farmer. On re-cross-examination he again stated he had no recollection of shooting at Farmer.

■■ A fair reading of defendant's entire testimony sustains the court's refusal to give the tendered instructions on voluntary manslaughter. It is not proper for the defendant to isolate selected words or phrases from his testimony, some of which are ambiguous at best, and elevate this testimony to a theory of defense to justify the giving of instructions on contradictory, inconsistent theories. As the supreme court stated in *People v. Bratcher*, 63 Ill. 2d 534, 349 N.E.2d 31 (1976), in holding defendant's tendered instruction on self-defense properly refused, "[t]o hold otherwise would permit a defendant to demand unlimited instructions, which are wholly unrelated to the case but are based upon the merest factual reference or witness's comment." (63 Ill. 2d 534, 540-41, 349 N.E.2d 31, 34.) The defendant is not entitled to a charge on a lesser offense simply in the hope that the jury will exercise compassion and convict on the lesser offense.

The trial court refused defendant's tendered instruction on voluntary manslaughter because defendant denied that he intentionally fired at Officer Farmer or had any recollection of shooting at him. Section 9—2(b) of the Code (Ill. Rev. Stat. 1975, ch. 38, par. 9—2(b)) applies to one who *intentionally* or *knowingly* kills another under an unreasonable belief that the killing is necessary in order to defend himself. Section 7—1 of the Code (Ill. Rev. Stat. 1975, ch. 38, par. 7—1) ("Use of Force in Defense of Person"), provides that:

"A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony."

The court did give IPI Criminal 24.06, which embodies the self defense provision of section 7—1 of the Code. The court also gave IPI Criminal 24.07 and 24.09 ("Use of Force in Defense of Dwelling" and "Use of Force by Agressor"), based on sections 7—2 and 7—4 of the Code (Ill. Rev. Stat. 1975, ch. 38, pars. 7—2, 7—4).

Defendant argues that if his use of deadly force in self-defense were unreasonable, he was guilty of voluntary manslaughter under section 9—

2(b) of the Code, and that the denial of his tendered instructions removed from the jury's consideration the factual question of unreasonable use of force in self-defense. (*People v. Dortch*, 20 Ill. App. 3d 911, 314 N.E.2d 324 (1st Dist. 1974).) He argues further that there is evidence suggesting that he fired at Officer Farmer intentionally, or at least that he shot at or in the direction of the policemen who were engaged in a concerted attack upon him. If the court found sufficient evidence to warrant the instructions on self-defense, then, he argues, the issue of voluntary manslaughter is also present for the jury's consideration as his reasonable or unreasonable use of force is always an issue in the case. In support of this argument defendant cites *People v. Johnson*, 1 Ill. App. 3d 433, 274 N.E.2d 168 (4th Dist. 1971); *People v. Wright*, 24 Ill. App. 3d 536, 321 N.E.2d 52 (3d Dist. 1975); *People v. Zertuche*, 5 Ill. App. 3d 303, 282 N.E.2d 201 (2d Dist. 1972).

Thus, in *Johnson* the court said:

> "In giving defendant's instruction on the justifiable use of force, the trial court here determined, as a matter of law, that there was sufficient evidence on that issue for the consideration of the jury. When the trial court determined that the facts in evidence justify or require the giving of an instruction on the justifiable use of force, there are, in fact, three alternatives for the consideration of the jury, *i.e.*, (1) murder, (2) that the use of force was justified and self defense was demonstrated, or (3) that while the defendant might have believed that the use of force was necessary under the evidence, such belief was unreasonable." (1 Ill. App. 3d 433, 435, 274 N.E.2d 168, 170.)

Like language appears in the other cases cited. However, we do not read these authorities as holding that in all cases where an instruction on self-defense is given, a voluntary manslaughter instruction may not be refused. In the dissent in *Johnson* it is cogently pointed out that because the facts may justify a justifiable use of force instruction, a voluntary manslaughter is not, *ipso facto*, mandated; that the concepts are neither automatically mutually inclusive or exclusive, but as most things in the law turn on the facts of each case.

In all the cases cited above the evidence justified the giving of instructions on voluntary manslaughter as well as self-defense as in each case it appears that the evidence would justify a jury determination that the defendant's belief that he acted in self-defense in taking the life of the deceased was unreasonable.

We believe the evidence here admits of no possible voluntary manslaughter verdict. If the jury believed the defendant's testimony, then he was clearly justified in using fatal force to defend himself against an attack from some 20 policemen who fired an estimated 200 to 500 rounds

into defendant's apartment, including nine tear-gas shells; in no event could defendant's belief be unreasonable should the jury accept his testimony as true (*People v. Reeves*, 47 Ill. App. 3d 406, 362 N.E.2d 9 (5th Dist. 1977); there would be no basis on which the jury could find defendant guilty of voluntary manslaughter; in fact, such a verdict could not stand (*People v. McMurry*, 64 Ill. App. 2d 248, 212 N.E.2d 7 (2d Dist. 1965); *People v. Hall*, 118 Ill. App. 2d 160, 254 N.E.2d 793 (1st Dist. 1970); nor was any evidence presented in the State's case that would justify such a verdict. There was no evidence presented which would justify a verdict of voluntary manslaughter. Under the prosecution's case, defendant was the aggressor and was guilty of murder (Ill. Rev. Stat. 1975, ch. 38, par. 7—4). If the defense was to be believed, defendant acted in justifiable defense of his person for even if defendant was mistaken in his belief that the police were attempting to kill him, his belief would not be unreasonable under these circumstances. The kind of assault against defendant described in his testimony by an army of policemen, would certainly constitute a "forcible felony" as the term is used in section 7—1 of the Criminal Code and defined in section 2—8 of the Code (Ill. Rev. Stat. 1975, ch. 38, par. 2—8); thus, defendant would be resisting the commission of a forcible felony and would be justified in using deadly force as a matter of law.

■■  Our disposition of defendant's contentions regarding the refusal to instruct the jury on the offense of voluntary manslaughter is dispositive of defendant's argument that the jury should have been instructed on involuntary manslaughter, a lesser included offense to the charge of murder. As in *People v. Singleton*, 41 Ill. App. 3d 665, 354 N.E.2d 464 (3d Dist. 1976), no version of the evidence would support a verdict of involuntary manslaughter.

Defendant's tendered instructions 10 and 11 were IPI Criminal Nos. 7.07 and 7.08, a definition and issues instruction on involuntary manslaughter. Section 9—3 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 9—3) defines involuntary manslaughter as follows:

> "A person who unintentionally kills an individual without lawful justification commits involuntary manslaughter if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly."

Section 4—6 of the Code (Ill. Rev. Stat. 1975, ch. 38, par. 4—6) defines recklessness as follows:

> "A person is reckless or acts recklessly, when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining the offense; and such disregard constitutes a gross deviation from

the standard of care which a reasonable person would exercise in the situation. * * *"

Reckless conduct is distinguished from intentional or knowing conduct described in sections 4—4 and 4—5 of the Code (Ill. Rev. Stat. 1975, ch. 38, par. 4—4, 4—5). Under section 4—4, a person intends to accomplish a result or intends the proscribed conduct "when his conscious objective or purpose is to accomplish that result or engage in that conduct." Under section 4—5, a person acts knowingly or with knowledge of "[t]he nature or attendant circumstances of his conduct, described by the statute defining the offense, when he is consciously aware that his conduct is of such nature or that such circumstances exist. * * *" He acts knowingly or with knowledge * * * "when he is consciously aware that such result is practically certain to be caused by his conduct."

Defendant argues that his testimony that he did not recall shooting at Officer Farmer would support an involuntary manslaughter verdict as this testimony negatives the intent or knowledge element required to support a murder conviction but would support a mental state of recklessness present in involuntary manslaughter. Defendant, however, has never denied that he intended to fire the rifle in the direction of a group of policemen. Either he intended the death of Officer Farmer or his act was one which created a strong probability to take the life of someone in the group of policemen in whose direction defendant fired. In *People v. Davis*, 35 Ill. 2d 55, 219 N.E.2d 468 (1966), the court observed that the statutory definitions of murder, voluntary manslaughter and involuntary manslaughter contained in the Criminal Code of 1961 are essentially the common law crimes expressed in simplified language. The malice element of murder is supplied by the performance of an act, the direct and natural tendency of which is to take the life of another.

One cannot intentionally fire a rifle into a crowd and argue that the act was merely done recklessly. There was no evidence that the rifle accidentally discharged (*People v. Bembroy*, 4 Ill. App. 3d 522, 281 N.E.2d 389 (1st Dist. 1972)) or that defendant's finger slipped and the gun discharged (*People v. Farmer*, 50 Ill. App. 3d 111, 365 N.E.2d 177 (5th Dist. 1977)). There was no evidence of a reckless act or reckless conduct.

In *People v. Cannon*, 49 Ill. 2d 162, 273 N.E.2d 829 (1971), the court said, in holding involuntary manslaughter instructions properly refused, "[he] intended to fire the gun and did in fact point it and shoot in the decedents' general direction. This act, done voluntarily and wilfully, is sufficient evidence of the intent requisite to constitute the offense of murder." (49 Ill. 2d 162, 166; 273 N.E.2d 829, 831.) Like language is found in *People v. Latimer*, 35 Ill. 2d 178, 220 N.E.2d 314 (1966).

The instructions on voluntary manslaughter were properly refused.

Defendant's tendered instructions 5 and 6, IPI Criminal Nos. 11.03 and 11.04, were the definitional instruction and issues instruction on aggravated assault. These were offered as an alternative theory to the charge of attempt murder of Officer Wren. They were denied for the reason that aggravated assault is not an included offense to attempt murder. It is not. An element in assault is the placing of the victim in reasonable apprehension of receiving a battery (Ill. Rev. Stat. 1975, ch. 38, pars. 12—1(a), 12—2(a)(1)). Attempt murder may be committed without regard to the state of mind of the victim and thus the greater offense (attempt murder) does not include every element of the alleged lesser included offense. (See *People v. Higgins*, 86 Ill. App. 2d 202, 229 N.E.2d 161 (5th Dist. 1967); *People v. Rainbolt*, 52 Ill. App. 3d 374, 367 N.E.2d 293 (5th Dist. 1977).) Nor was there any evidence as in *People v. Brown*, 14 Ill. App. 3d 196, 302 N.E.2d 101 (1st Dist. 1973) that Officer Wren was placed in apprehension of receiving a battery. He was not aware that defendant might fire a shot at him prior to the occurrence.

While not argued, the act of defendant could not constitute an assault. The shot fired by defendant went through Officer Wren's hat knocking it from his head. Any offensive touching of the person or clothing of the victim constitutes a battery—not an assault. See Ill. Ann. Stat., ch. 38, pars. 12—1, 12—3, Committee Comments (Smith-Hurd 1972); 6A C.J.S. *Assault & Battery* §70 (1975).

■■ The tendered instructions on aggravated assault were properly refused.

The defendant also assigns as error the omission of the defendant's justifiable use of force from the issues instructions on murder and attempt murder. When self-defense is raised by some evidence, the prosecution must sustain its burden of proving defendant guilty beyond a reasonable doubt as to that issue as well as the other elements in the substantive offense charged, here murder and attempt murder. When IPI Criminal No. 24.06 ("Use of Force in Defense of a Person") is given, then the issues instruction on the substantive offense should conform to IPI Criminal No. 25.05 so that a single issues instruction informs the jury of the prosecution's burden of proof as to all elements of the offense, including the issue of self-defense. Here the State's issues instructions, IPI Criminal Nos. 7.02 (murder) and 6.07 (attempt murder) did not inform the jury that the prosecution must prove beyond a reasonable doubt that the defendant was not justified in using deadly force in self-defense.

No objection was raised by the defendant to the prosecution's tendered issues instruction nor did the defendant tender IPI Criminal No. 25.05, the proper issues instruction, after the court gave his tendered instructions on justifiable use of force. The result was that no instruction told the jury of

the prosecution's burden of proof on this issue; although, IPI Criminal No. 2.03 on the presumption of innocence and general burden of proof was tendered by the State and given.

The defendant argues that we should consider the failure to give the proper issues instruction plain error under Supreme Court 451(c) (Ill. Rev. Stat. 1975, ch. 110A, par. 451(c)).

This precise issue was addressed in *People v. Wright*, 24 Ill. App. 3d 536, 321 N.E.2d 52 (3d Dist. 1974). There the court held that the failure to include defendant's justifiable use of force in the issue's instruction on murder may have misled the jury on the State's burden of proof; however, IPI Criminal Nos. 7.02 and 25.05 were both given. The court recognized the failure to instruct the jury properly as plain error and reversed defendant's conviction. A like result was reached in *People v. Wright*, 32 Ill. App. 3d 736, 336 N.E.2d 18 (1st Dist. 1975).

This court has reached a contrary result on this question. In *People v. Allen*, 35 Ill. App. 3d 342, 341 N.E.2d 431 (5th Dist. 1976) we said:

> "If an accused wishes certain instructions to be given, he should offer them and request the court to give them, since the trial court is under no duty to give instructions on its own motion. (*People v. Meeks*, 11 Ill. App. 3d 973.) It has long been held that the jury is properly instructed if the series of instructions, construed as a whole, fully and properly informs the jury of the law applicable to the case. (*People v. Turner*, 82 Ill. App. 2d 10.) In the instant set of instructions, the jury was given IPI 7.02 (burden of proof of murder, without mention of self-defense), 24.06 (justifiable use of force); and IPI 2.03 (presumption of innocence, including the State's burden of proving the defendant guilty beyond reasonable doubt and the defendant not being required to prove his innocence). This series construed together sufficiently informed the jury of the law applicable to the defendant's theory of defense, self-defense, and of the State's burden of proof. Had the defendant tendered IPI 25.05 the court would have been under a duty to give the instruction. In the absence of such a request, however, the instruction which the court did give provided an adequate guide for the jury." 35 Ill. App. 3d 342, 347, 341 N.E.2d 431, 435.

■■ We adhere to our holding in *Allen*. (Accord, *People v. Caldwell*, 39 Ill. App. 3d 1, 349 N.E.2d 462 (2d Dist. 1976); *People v. Lynch*, 43 Ill. App. 3d 1039, 358 N.E.2d 17 (1st Dist. 1976); *People v. Jenkins*, 43 Ill. App. 3d 831, 357 N.E.2d 192 (1st Dist. 1976).) In *People v. Caldwell*, the court explained its holding in *People v. Wright*, 24 Ill. App. 3d 536, 321 N.E.2d 52 (3d Dist. 1974). It was because the jury was given conflicting issues instructions, both IPI Criminal Nos. 25.05 and 7.02, that created the

error requiring reversal. We note that *People v. Allen* was cited in *Caldwell* with approval.

■■ Defendant next assigns as error the refusal of the court to admit into evidence a video tape depicting the defendant's apartment shortly after his arrest. Defendant argues that it revealed the amount of "fire-power" directed into his apartment and thus the intensity of the assault upon his dwelling and person by the East St. Louis police.

While admitting the admissibility of such evidence is within the sound discretion of the trial court (*People v. Mines*, 132 Ill. App. 2d 628, 270 N.E.2d 265 (1st Dist. 1971)), he argues the denial of admission was an abuse of discretion under the circumstances of the case.

The tape was offered in evidence prior to the commencement of the trial. The court observed that its materiality was not demonstrated at that time. In fact, the undisputed testimony was that the police fired numerous rounds, including tear gas, into the apartment. The still photographs, admitted without objection, depict the extent of the damage to the exterior of the building. The defendant never re-offered the tape or made an offer of proof regarding the contents of the tape or its materiality.

In any event we find no abuse of discretion in the ruling of the trial court.

Lastly, the defendant argues that the court erred in sentencing defendant to a clearly excessive term, 100 to 200 years, which failed to take into account defendant's rehabilitative potential. While it is true that defendant had no serious prior criminal record and had been honorably discharged from the paratroops in 1965, it is also true that the crime committed resulted in the death of a police officer while acting in the line of duty.

Moreover, notwithstanding the apparent severity of the sentence, the defendant will be eligible for parole after serving 20 years less "time credit for good behavior" under section 3—3—3(a)(1) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1003—3—3(a)(1)). Under the Administrative Regulations of the Department of Corrections this could result in parole eligibility after defendant has served 11 years, three months. *People v. Soto*, 35 Ill. App. 3d 166, 341 N.E.2d 107 (1st Dist. 1975).

■■ The supreme court has repeatedly stated that sentencing is the primary function of the trial court in the exercise of its sound discretion. Its judgment in this regard should not be disturbed absent a clear abuse of discretion. (*People v. Perruquet*, 68 Ill. 2d 149, 368 N.E.2d 882 (1977); *People v. Butler*, 64 Ill. 2d 485, 356 N.E.2d 330 (1976).) We find no abuse of discretion in the sentence imposed.

■■ The State has requested that we remand the cause to the Circuit

Court of St. Clair County for entry of a sentence on the attempt murder conviction. It is clear under the holding of *People v. King*, 66 Ill. 2d 551, 363 N.E.2d 838 (1977), that the conviction without sentence is an incomplete judgment and that a proper sentence should have been entered on the conviction for attempt murder. Under *People v. Scott*, 69 Ill. 2d 85, 370 N.E.2d 540 (1977), the cause should be remanded for entry of sentence on the attempt murder conviction.

The judgments of conviction for murder and attempt murder are affirmed, and the cause is remanded to the Circuit Court of St. Clair County for entry of a sentence on the attempt murder conviction.

Affirmed and remanded.

JONES, J., concurs.

Mr. JUSTICE GEORGE J. MORAN, dissenting:

The majority concedes that all that need be shown to justify the giving of an instruction is a slight amount of evidence supporting the underlying theory. It is clear from a fair reading of the record in this case that defendant Tiller testified that he did not fire the first shot and that he believed the police wanted to kill him. It is equally clear that the policemen who witnessed and/or participated in the incident testified that ample opportunity to surrender was afforded the defendant at various intervals during the shoot-out. In holding that this evidence does not warrant the giving of IPI Criminal No. 7.05 on voluntary manslaughter, the majority first examined the State's evidence in its entirety and concludes that nothing therein would support the giving of any of the tendered instructions. The court then proceeds to examine the defendant's evidence in its entirety and concludes that the trial court properly refused IPI Criminal No. 7.05 on voluntary manslaughter because defendant had no recollection of shooting Officer Farmer. If the jury believed defendant's testimony in toto, the majority reasons, then defendant's killing of Farmer would be justified. If not, the jury must believe the State's evidence and thus defendant would be guilty of murder and nothing else.

I believe this is an unduly restrictive and improper method of reviewing the evidence. The defendant is entitled to an instruction on a lesser included offense if there is any evidence in the record which would so reduce the crime (*People v. Joyner*, 50 Ill. 2d 302, 278 N.E.2d 756; *People v. Jones*, 384 Ill. 407, 51 N.E.2d 543); moreover, such evidence may even be inconsistent with his own testimony. (*People v. Thompson*, 35 Ill. App. 3d 773, 342 N.E.2d 445.) I think this means that all of the evidence, both the State's and the defendant's, must be examined

together and if the jury could reasonably believe portions of the evidence of each side and arrive at a lesser included offense, the applicable instruction must be given. Here the jury could have believed both that defendant thought the police wanted to kill him and that the police gave him opportunities to surrender without harm to himself. This being so, the jury could have found that defendant believed circumstances existed which would justify the killing but that his belief was unreasonable, which is the substance of IPI Criminal No. 7.05. The majority assumes that juries will accept all aspects of one party's proof and reject all aspects of the other's. In my opinion this is unrealistic.

Finally, I do not agree with the majority's interpretation of *People v. Johnson*, 1 Ill. App. 3d 433, 274 N.E.2d 168, and its progeny. The language in *Johnson* is unequivocal. Once the court determines that the evidence requires the giving of an instruction on the justifiable use of force (self defense) an instruction on voluntary manslaughter must be given. The only difference between the two is that with the former the belief that the use of force is necessary is reasonable while with the latter the belief is unreasonable. *People v. Joyner*, 50 Ill. 2d 302, 278 N.E.2d 756.